560 F.2d 652
 Ira NASH, Jr., Petitioner-Appellee,
v.
W. J. ESTELLE, Director, Texas Department of Corrections,
Respondent- Appellant.
 No. 75-3772.
 United States Court of Appeals,
Fifth Circuit.
 Oct. 5, 1977.
Rehearing En Banc Granted Dec. 15, 1977.
 
 John L. Hill, Atty. Gen., John Pierce Griffin, Asst. Atty. Gen., David M. Kendall, Jr., 1st Asst. Atty. Gen., Joe B. Dibrell, Jr., Chief, Enforce. Div., Robert E. DeLong, Jr., Asst. Attys. Gen., Austin, Tex., for respondent-appellant.
 Michael A. Hatchell (Court-Appointed) Tyler, Tex., for petitioner-appellee.
 Appeal from the United States District Court for the Eastern District of Texas.
 Before MORGAN and HILL, Circuit Judges, and NOEL, Senior District Judge.*
 NOEL, Senior District Judge:
 After a jury trial, petitioner, Ira Nash, Jr., was convicted of murder with malice and sentenced to imprisonment for a term of one hundred years. His conviction was affirmed by the Texas Court of Criminal Appeals, Nash v. State, 477 S.W.2d 557 (Tex.Cr.App.1972), cert. denied, 409 U.S. 887, 93 S.Ct. 191, 34 L.Ed.2d 144. The court below, without holding an evidentiary hearing, granted Nash's application for writ of habeas corpus holding that the introduction of two written confessions into evidence in the state court trial was constitutional error.
 Nash was arrested on a warrant on May 26, 1969, and was taken before a justice of the peace who informed him of his constitutional rights to remain silent and to the assistance of counsel pursuant to Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). While in custody, Nash orally confessed the murder to several deputy sheriffs.[1] On the morning of June 2, 1969, Nash was brought to the district attorney's office to talk to Assistant District Attorney F. R. Files. The entire conversation was recorded on a magnetic tape and from that recording a written statement was prepared. That afternoon, Nash returned to Files' office, was again informed of his constitutional rights, reviewed the statement with Files, made minor corrections of it, and then signed the statement.
 On June 3, Nash and Files, together with a deputy and a secretary, drove to the scene of the murder. Their conversation was taken in shorthand by the secretary who later prepared a second statement from her notes. That afternoon, Nash was brought to Files' office and signed the second statement.
 The issue of the admissibility of these confessions is based upon whether the procedural guidelines set forth in Miranda were followed prior to the taking of the first written confession on June 2, 1969. At their first meeting, Nash told Files that he would like for an attorney to be appointed to represent him. An attorney was not appointed until after Nash had signed the two written confessions. Because of the importance of the request for counsel and the question of whether there was a waiver of the right to have counsel present at questioning, the conversation between Files and Nash on June 2, from its beginning through the signing of the waiver of rights follows:
 
 
 [2]
 
 
 
 The state court, in written findings of fact and conclusions of law, held that under the totality of the circumstances, Nash voluntarily waived his Miranda rights. The court below held as a matter of law that Nash's right to counsel could not be waived.[3] We conclude that the application of a per se rule against waiver was improper in this case and therefore reverse.
 Whether or not the right to counsel may be waived after the suspect has indicated his desire for representation by counsel has been previously considered by this Court. There are two lines of cases: those which hold that a subsequent waiver without the presence of counsel is involuntary per se and those which hold that a subsequent waiver could be voluntary. The results of these cases can only be reconciled by the difference between their facts.
 The first Fifth Circuit case which considered this question was United States v. Priest, 409 F.2d 491 (5th Cir. 1969), wherein the Court stated:
 Where there is a request for an attorney prior to any questioning, as in this case, a finding of knowing and intelligent waiver of the right to an attorney is impossible. . . . (T)he suspect has an absolute right to delay interrogation by requesting counsel. If such a request is disregarded and the questioning proceeds, any statement taken thereafter cannot be a result of waiver but must be presumed a product of compulsion, subtle or otherwise.
 409 F.2d at 493.
 In Priest, the defendant was in custody in a hospital and was given a form which contained the Miranda warnings. Priest stated he did not want to sign the form until he had consulted with his attorney. The request for an attorney was ignored and the questioning proceeded until Priest had incriminated himself.
 Priest was cited with approval in United States v. Massey, 550 F.2d 300 (5th Cir. 1977). However, the broad language which states that waiver is impossible was limited by the recognition in Massey that there may be a waiver under certain circumstances. To find a waiver, the "record must show that 'an accused was offered counsel but intelligently and understandingly rejected the offer.' " 550 F.2d at 308. In Massey, there were no circumstances from which a waiver could be found. The defendant had made repeated requests to consult with an attorney and stated that he did not want to talk about his case with agents of the Federal Bureau of Investigation who were interrogating him. Despite these continued requests for counsel, the agents continued to interrogate him from the time of his arrest until he finally signed a waiver of rights form and made incriminating statements.
 United States v. Blair, 470 F.2d 331 (5th Cir. 1972), cert. denied, 411 U.S. 908, 93 S.Ct. 1536, 36 L.Ed.2d 197, also held that there could be no waiver under the facts of the case. The suspect stated that he wanted an attorney present before any questioning took place, but in complete disregard of these requests, the police continued questioning him until he had incriminated himself.
 These cases illustrate that where a suspect makes an unequivocal request to have counsel present during questioning and the police ignore that request and continue the interrogation, that a finding of knowing and intelligent waiver of the right to an attorney is impossible. The other lines of cases, however, hold that where a suspect makes a request for an attorney and pursuant to that request the police terminate the interrogation, subsequent circumstances may be found to be sufficient to establish that the suspect knowingly and intelligently waived his right to counsel.
 In United States v. Anthony, 474 F.2d 770 (5th Cir. 1973), United States v. Hodge, 487 F.2d 945 (5th Cir. 1973), and United States v. Cavallino, 498 F.2d 1200 (5th Cir. 1974), the defendants all requested counsel and the interrogations ceased. Thereafter, each defendant initiated further discussion and made incriminating admissions. These cases held that the defendants under such circumstances waived their right to counsel.
 In the latter line of cases, the suspect initiated further conversation with the police after the evidence-seeking interrogation had ceased. In the former line of cases, the police continued the evidence-seeking interrogation despite the suspect's request for counsel. The present case falls into a middle area inasmuch as the interview was not terminated when Nash indicated a desire for counsel; however, evidence-seeking interrogation did cease. The question thus presented is whether all conversation must cease once a suspect indicates a desire for counsel or whether the suspect's wishes can be explored to determine exactly what he wants. Since this is a matter of first impression for this Court, we turn to the Miranda decision itself to resolve the question. Regarding a request for counsel, Miranda states:
 Prior to any questioning, the person must be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed. The defendant may waive effectuation of these rights, provided the waiver is made voluntarily, knowingly, and intelligently. If, however, he indicates in any manner and at any stage of the process that he wishes to consult with an attorney before speaking there can be no questioning.
 384 U.S. at 444-445, 86 S.Ct. at 1612.
 Once warnings have been given, the subsequent procedure is clear. If the individual indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent, the interrogation must cease. At this point he has shown that he intends to exercise his Fifth Amendment privilege; any statement taken after the person invokes his privilege cannot be other than the product of compulsion, subtle or otherwise. Without the right to cut off questioning, the setting of in-custody interrogation operates on the individual to overcome free choice in producing a statement after the privilege has been once invoked. If the individual states that he wants an attorney, the interrogation must cease until an attorney is present. At that time, the individual must have an opportunity to confer with the attorney and to have him present during any subsequent questioning.
 384 U.S. at 473-474, 86 S.Ct. at 1627-1628.
 While this language indicates that when a suspect makes a request for counsel there can be no further evidence-seeking interrogation without the presence of counsel, it does not preclude further inquiry to determine, for example, whether the suspect wants counsel appointed before making any statement to the police or merely wants counsel at the time of his trial. The Supreme Court in Miranda cited the practice of the FBI and stated that that practice was consistent with the procedure delineated in the Miranda decision. See 384 U.S. at 483-86, 86 S.Ct. 1602. Of particular importance in this case is the statement of the Bureau's practice in the event the suspect requests counsel:
 If (a suspect) is indecisive in his request for counsel, there may be some question on whether he did or did not waive counsel. Situations of this kind must necessarily be left to the judgment of the interviewing Agent.
 384 U.S. at 485, 86 S.Ct. at 1633.
 In a footnote, the Court specifically approved an agent exercising his judgment in determining whether the suspect waives his right to counsel, but added a caveat that the standard for waiver is high and the ultimate responsibility for resolving whether there has been a waiver lies with the courts. Miranda v. Arizona, supra, 384 U.S. at 486, n. 55, 86 S.Ct. 1602. This is the precise situation which is present in this case.
 At the outset of the conversation, it is apparent that Nash was fully informed of his right to have counsel present during any questioning, that he understood this right, but that he wanted to talk with Files about the crime. It is important to emphasize the language used by Files:
 You have the right to talk to a lawyer and have him present with you while you are being questioned. . . .
 If you can't afford to hire a lawyer, one will be appointed to represent you before any questioning, if you want one. . . .
 (Y)ou can end this interview at any time. . . .
 If you get tired of talking to me, if you don't like something I say, you don't like it, you just don't like anything about it, you can just tell me to be quiet, that you don't want to talk to me any more. . . .
 Following each of these statements, Nash responded that he understood the rights Files was explaining to him. Files then said he wanted to talk about the taxicab shooting and Nash responded that he would talk to him about that. At this point in their conversation, it is clear that Nash had communicated to Files his desire to waive his constitutional rights to remain silent and to the presence of an attorney.
 It was only after Nash began to fill in the blank portions of the waiver form and to read it out loud that he expressed any interest in having an attorney:The district court held that as a matter of law, once Nash requested counsel, Nash could not waive that right unless he had been given the opportunity to consult with an attorney or unless he voluntarily initiated a further conversation after the interrogation had ceased. Miranda does not require such a restrictive position. We hold that where a suspect, after being fully informed of his rights, makes an indecisive request for counsel, the person conducting the interrogation may make an inquiry into whether the suspect does or does not want counsel present.
 Under the circumstances of this case, Nash's request for counsel was indecisive and it was proper for Files to inquire whether or not Nash was waiving counsel. It is apparent that Nash had inconsistent desires. He indicated that he wanted an attorney, but that he also wanted to go ahead and talk about the crime without waiting for an attorney to be appointed. Nash seemed to be thinking the matter through out loud. His statement that he wanted to go ahead and talk was made without any prodding or questioning from Files whatsoever. Instead, it was triggered by Files' expression of the mandate of Miranda that the interrogation must stop. To disregard the effect of the expression by Nash of a desire to continue the interrogation would be to artificially truncate Nash's thoughts and statements. We decline to do so, concluding that Nash's request for counsel when considered in context was sufficient to justify further inquiry by Files to clarify exactly what Nash wanted.
 After he decided that Nash had waived his right to have counsel present, Files began questioning Nash about the crime and the confession resulted. Files' determination that Nash did waive his rights is not, however, binding on the courts. Whether he did waive his rights is a determination which must be made by the district court.[4] In deciding that there is no per se rule against waiver, we hold only that Nash could waive his right to have counsel present. We express no view as to whether Nash did make a knowing and voluntary waiver under all the circumstances.
 REVERSED AND REMANDED.
 
 MORGAN, Circuit Judge, dissenting:
 
 1
 I respectfully dissent. This case falls squarely within the scope of the per se rule against waiver of the right to counsel established both in this court and in the United States Supreme Court. Even if the majority eschews the per se rule, clear unmistakable waiver has not been proved. The district court should be affirmed.
 
 
 2
 Although the law surrounding waiver is confused, a measure of order can be injected. After the right to counsel has attached, there are four distinct factual circumstances in which the issue of waiver arises, with distinctly different legal interests involved in each. Waiver problems can arise (1) pre-Miranda warning, (2) post-Miranda, pre-request for counsel, (3) post-request for counsel, pre-audience with counsel, and (4) post-audience with counsel.
 
 
 3
 The law is clear that waiver is not possible prior to the giving of Miranda warnings. All statements made by a suspect under investigation are excludable if Miranda warnings are not given. See, Miranda v. Arizona, 384 U.S. 436, 471, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
 
 
 4
 In the three remaining scenarios, however, the legal impact of waiver is not clear. Informed, intelligent waiver should be permitted after Miranda warnings if the suspect has not, at any time, requested a lawyer. The Supreme Court in Miranda specifically addressed this circumstance:
 
 
 5
 Prior to any questioning, the person must be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed. The defendant may waive effectuation of these rights, provided the waiver is made voluntarily, knowingly, and intelligently. If, however, he indicates in any manner and at any stage of the process that he wishes to consult with an attorney before speaking there can be no questioning.
 
 
 6
 384 U.S. at 444-45, 86 S.Ct. at 1612. Thus prior to any request by the suspect, waiver is possible as long as it is informed and intelligent. Allowing waiver in this factual situation only recognizes that no person should be forced to have an attorney; each person is the captain of his own destiny.
 
 
 7
 Waiver should be impossible, if after the Miranda warnings the suspect requests counsel, but thereafter recants, prior to having the opportunity of seeing counsel. A per se rule is not only needed under these circumstances, it is compelled by Miranda. The request followed quickly by waiver at minimum suggests confusion on the part of the suspect. At worst, such action suggests questionable conduct on the part of the interrogators. This situation was also specifically addressed in Miranda :
 
 
 8
 Once warnings have been given, the subsequent procedure is clear. If the individual indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent, the interrogation must cease. At this point he has shown that he intends to exercise his Fifth Amendment privilege; any statement taken after the person invokes his privilege cannot be other than the product of compulsion, subtle or otherwise. Without the right to cut off questioning, the setting of in-custody interrogation operates on the individual to overcome free choice in producing a statement after the privilege has been once invoked. If the individual states that he wants an attorney, the interrogation must cease until an attorney is present. At that time, the individual must have an opportunity to confer with the attorney and to have him present during any subsequent questioning.
 
 
 9
 384 U.S. at 473-74, 86 S.Ct. at 1627-1628. In his concurrence in Michigan v. Mosely, 423 U.S. 96, 96 S.Ct. 321, 46 L.Ed.2d 313 (1975), Justice White recognized that this language created a per se rule:
 
 
 10
 The Court showed in the very next paragraph, moreover, that when it wanted to create a per se rule against further interrogation after assertion of a right, it knew how to do so. The Court there said "(i)f the individual states that he wants an attorney, the interrogation must cease until an attorney is present." . . . However, when the individual indicates that he will decide unaided by counsel whether or not to assert his "right to silence" the situation is different.
 
 
 11
 423 U.S. at 109-10, 96 S.Ct. at 329. In United States v. Priest, 409 F.2d 491 (5th Cir. 1969), this court recognized the applicability of the per se rule in the instant situation:
 
 
 12
 Where there is a request for an attorney prior to any questioning, as in this case, a finding of knowing and intelligent waiver of the right to an attorney is impossible. . . . (T)he suspect has an absolute right to delay interrogation by requesting counsel. If such a request is disregarded and the questioning proceeds, any statement taken thereafter cannot be a result of waiver but must be presumed a product of compulsion, subtle or otherwise.
 
 
 13
 409 F.2d at 493. The instant case falls precisely within this compelling line of authority and therefore the district court should be affirmed.
 
 
 14
 Under the circumstance in which the accused has requested counsel, has met with or had the opportunity to meet with counsel, but who then waives the benefit of counsel, waiver should be permissible. The suspect has benefitted from counsel at least to the extent of making an informed waiver of counsel's continued assistance. The suspect has had the opportunity of determining, for himself, counsel's prospective worth. If the suspect determines that further assistance of counsel is unnecessary, the law should give effect to that choice. Again, a lawyer cannot be forced on a suspect.
 
 
 15
 Not only is the per se rule compelled by authority, its use would facilitate the work of the police and the courts by providing certainty at a very sensitive juncture in the criminal process. The rule should not be abandoned.
 
 
 16
 Even if the Court does refuse to recognize the applicability of a per se rule against waiver in the present case, clear unmistakable waiver has not been proved. The burden rests on the government to prove waiver and that burden is "heavy." Miranda v. Arizona, 384 U.S. 436, 475, 86 S.Ct. 1602, 16 L.Ed.2d 694. The purpose of Miranda was to minimize the use of official psychological coercion in interrogation. Such psychological coercion is certainly present in this case. Indeed, Files implied that Nash would lose some advantage if an attorney was appointed:
 
 
 17
 Files: Well, I can talk about it with you and I would like to, but if you want a lawyer, well, I am going to hold off, I can't talk to you. It's your life.
 
 
 18
 From the rest of the transcript, it is evident that not only was the suspect equivocal and confused concerning his rights but also that the official engaged in the type of subtle coercion that was condemned in both Miranda and Priest. Under the circumstances, it would be impossible to hold that the heavy burden of proving clear, unmistakable waiver was carried. The district court should be affirmed.
 
 
 19
 ON PETITION FOR REHEARING AND PETITION FOR REHEARING EN BANC
 
 
 20
 Before BROWN, Chief Judges, and THORNBERRY, COLEMAN, GOLDBERG, AINSWORTH, GODBOLD, MORGAN, CLARK, RONEY, GEE, TJOFLAT, HILL, FAY and RUBIN, Circuit Judges.
 
 BY THE COURT:
 
 21
 A member of the Court in active service having requested a poll on the application for rehearing en banc and a majority of the judges in active service having voted in favor of granting a rehearing en banc,
 
 
 22
 IT IS ORDERED that the cause shall be reheard by the Court en banc with oral argument on a date hereafter to be fixed. The Clerk will specify a briefing schedule for the filing of supplemental briefs.
 
 
 
 *
 James Noel, Senior United States District Judge for the Southern District of Texas, sitting by designation
 
 
 [1]
 Nash does not contend that this confession was illegally obtained. There was no attempt made by the state to introduce this confession at the state trial
 
 
 [2]
 The state trial court held a pre-trial hearing on the admissibility of the confessions. The tape of this conversation was played at this hearing and the court denied the motion to suppress. At the trial, the tape was also played
 
 
 [3]
 Cf. Brewer v. Williams, 430 U.S. 387, 404, 97 S.Ct. 1232, 51 L.Ed.2d 424 (1977), where the Supreme Court emphasized that they did not hold that Williams could not waive his right to have counsel at any questioning, but merely held that Williams did not waive that right
 
 
 [4]
 At oral argument, appellant asserted that we should extend the holding of Stone v. Powell, 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976), that a state prisoner may not be granted federal habeas corpus relief on a Fourth Amendment claim where the state has provided an opportunity for a full and fair determination of that claim, to Fifth Amendment Miranda claims. Inasmuch as Stone was decided subsequent to the district court's decision, the applicability of Stone was not considered below, nor briefed here. We leave that question for initial consideration by the district court upon remand, if its determination should be necessary for the proper disposition of this case