**GOVERNMENT OF the CANAL ZONE,**
**Plaintiff-Appellant,**

**v.**

**Godofredo GOMEZ, V. (Ventura),**
**Defendant-Appellee.**

**No. 77–1597.**

United States Court of Appeals,
Fifth Circuit.

Feb. 6, 1978.

Frank J. Violanti, U. S. Atty., Balboa, Canal Zone, for plaintiff-appellant.

Daniel D. Douglass, Balboa, Canal Zone (Court-Appointed), for defendant-appellee.

Before INGRAHAM, GEE and TJOF-LAT, Circuit Judges.

INGRAHAM, Circuit Judge.

Defendant Godofredo Gomez was arrested on suspicion of murder. A confession later given by Gomez was suppressed by the district court on the ground that his request for counsel was refused by police. On appeal [1] of the suppression order by the government, we affirm.

The Canal Zone police were notified of the murder on October 1, 1976. On that same day, they discovered that a stableboy at the Pacific Riding Club was missing. At about 4 P.M. the police arrived at the club and questioned Gomez, an employee of the establishment, regarding the identity of the victim. Prior to questioning, Gomez was informed of his *Miranda* rights.

At 6 P.M. the police took Gomez to the police station. A police detective testified that he read the *Miranda* warnings to Gomez in Spanish and explained them in detail, after which Gomez said that he understood his rights. Gomez was taken home at 10 P.M. after having been questioned no more than forty minutes.

At 7 A.M. on October 3, 1976, Gomez visited his boss at the riding club. He said he was afraid of being arrested and that he had no money to hire an attorney. His employer reassured Gomez that the court would appoint an attorney if he was indigent, or, in any event, the stable would provide him with counsel.

At 11 A.M. that day Gomez was taken back to the police station for a polygraph examination, at which time he was again given his warnings. This time he requested an attorney. Gomez testified that the police asked him why he desired an attorney. When he answered, they told him that he wanted an attorney because he was guilty.[2] The polygraph examination proceeded to conclusion without an attorney present, and without Gomez admitting any aspect of the murder. In fact, Gomez testified that upon returning him to the stables, the police told him that the results of the test indicated that he was innocent.

Gomez, who was still not under arrest, was again taken to the police station at about 6:40 P.M. on October 4, 1976. By this time he was the prime suspect. He was given his *Miranda* warnings and then after ninety minutes of questioning he confessed.[3] In the tape recorded confession, he admitted killing the deceased, but claimed it was self defense.

The words of the Supreme Court still ring loud and clear in its admonition that "[i]f the [accused] states that he wants an attorney, the interrogation must cease until an attorney is present." *Miranda v. Arizona,* 384 U.S. 436, 474, 86 S.Ct. 1602, 1628, 16 L.Ed.2d 694 (1966). Once the accused has requested counsel:

[i]f the interrogation continues without the presence of an attorney and a statement is taken, a heavy burden rests on the government to demonstrate that the defendant knowingly and intelligently waived his privilege against self-incrimi-

1. This court has jurisdiction under 18 U.S.C. § 3731 (Supp.1977).

2. A government detective testified that Gomez never asked for an attorney. We sustain the finding of the trial court for the court was not clearly erroneous in its conclusion that Gomez did ask for an attorney and his request was denied.

3. Gomez testified that he confessed because the police threatened to throw both him and his wife in jail. According to Gomez, he was told, "Your wife is pregnant and we're not going to care if she dies with the pains of childbirth in jail." Record, vol. 2, at 29. We accept the finding of the trial court that he was not so threatened by the police.

nation and his right to retained or appointed counsel.

*Id.* at 475, 86 S.Ct. at 1628.

The government argues that it does not have to meet this heavy burden because the *Miranda* violation occurred on October 3, while the confession was taken on October 4. There was a lapse of about twenty-four hours between the time Gomez was released from custody following his denial of counsel and the time he was brought back to the station and confessed. Two detectives testified that they gave renewed *Miranda* warnings to Gomez following this twenty-four hour hiatus and before Gomez confessed. Therefore, according to the government, the question becomes whether, under the so-called "fruit of the poisonous tree principle,"[4] the initial violation had such a continuing effect as to taint the ensuing confession, despite the *Miranda* warnings.

In order to evaluate the government's contention, we must examine the two distinct factual patterns which have evolved in this circuit construing the above language from *Miranda*. In the first group of cases, a suspect requests to have counsel present during questioning, but the police ignore the request and continue interrogation until he finally confesses. Under these circumstances, a knowing and intelligent waiver is very difficult, if not impossible, to establish. *See, e. g., United States v. Blair,* 470 F.2d 331, 338 (5th Cir. 1972); *United States v. Priest,* 409 F.2d 491 (5th Cir. 1969). We are not presented here with the problem of persistent questioning by the police until the suspect breaks down.

Instead, the present case falls under the second line of cases. Under this factual pattern, interrogation ceases after the accused requests counsel. Then, after a period of time has passed, questioning continues and a confession is taken. Though interrogation in this case continued after Gomez requested an attorney, the confession itself did not surface until a subsequent interview some twenty-four hours following the original denial of counsel.

When the interrogation has not been continuous, the question of whether the accused knowingly and intelligently waived his rights is a question that can be answered only on the facts of each case. Waiver has been found and the confession admitted when the interrogation was continued at the behest of the accused, *see, e. g., United States v. Cavallino,* 498 F.2d 1200 (5th Cir. 1974); *United States v. Hodge,* 487 F.2d 945 (5th Cir. 1973), and where intervening events between the denial of counsel and the later confession helped dissipate the taint of the earlier violation, *United States v. Grady,* 423 F.2d 1091, 1093 (5th Cir. 1974). Central to the outcome of these cases was the belief that the suspect should not have been prevented from changing his mind once he had stated that he desired an attorney. *Id.*

We therefore have recognized limited circumstances where a confession was properly admitted even though an earlier request for counsel was ignored.[5] In none of these cases, however, did the prosecution enjoy a lessened burden of proof. We see

---

4. First advanced in *Silverthorne Lbr. Co. v. United States,* 251 U.S. 385, 40 S.Ct. 182, 64 L.Ed. 319 (1919), this doctrine was more recently explicated in *Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). The events in the later case followed an unlawful arrest. The Court suppressed the statements of one defendant, and narcotics taken from another defendant on the basis of those statements, because they were fruits of the unlawful arrest. The Court, however, recognized that the connection between an illegal arrest and a subsequent statement could "become so attenuated as to dissipate the taint." *Id.* at 491, 83 S.Ct. at 419. On the evidence that one defendant had been released on his own recognizance after a lawful arraignment, and had returned voluntarily several

days later to make a statement, the Court found that such a dissipation had occurred and upheld a conviction based in part upon the statement. The Court articulated the test to be, "whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint." *Id.* at 488, 83 S.Ct. at 417. *See Parker v. Estelle,* 498 F.2d 625 (5th Cir. 1974); *United States v. Owen,* 492 F.2d 1100 (5th Cir. 1974).

5. The present case is not governed by the recent decision of this court in *Nash v. Estelle,* 560 F.2d 652 (5th Cir.), *petition for en banc granted,* No. 75–3773 (Dec. 15, 1977). The re-

no reason to apply a different rule under the facts of this case where twenty-four hours elapsed between the time counsel was denied and the time the confession was taken. Instead, this twenty-four hour lapse is just one factor to be considered when determining whether or not the accused has waived his rights.[6] It cannot be too strongly emphasized that the prosecution still carries a heavy burden to prove a knowing and intelligent waiver. *See United States v. Massey,* 550 F.2d 300 (5th Cir. 1977); *United States v. Womack,* 542 F.2d 1047 (9th Cir. 1976). As the Supreme Court reiterated just last session in a case involving denial of counsel, "courts indulge in every reasonable presumption against waiver." *Brewer v. Williams,* 430 U.S. 387, 404, 97 S.Ct. 1232, 1242, 51 L.Ed.2d 424 (1977).

■ In this case, the government has not met its burden of establishing a knowing and intelligent waiver.[7] Gomez, at the age of twenty-eight years, was unable to read or write and did not speak English. We can assume that he was not familiar with American customs or the Bill of Rights for he was not even a native Panamanian—he hails from El Salvador. When he requested counsel, he was told that his request implicated him in the crime. Gomez was illiterate, in a strange country, arrested for the first time[8] and then informed that if he exercised his most basic right, that of counsel, he was guilty. We hold that Gomez did not knowingly and intelligently waive his right to counsel.

The government argues in the alternative that the order should be vacated and the case remanded. First, the government contends that the district court confused the issues by predicating its holding upon the alleged involuntariness of the confession instead of upon violation of the *Miranda* rule. Although there is some discussion in the record on the issue of voluntariness, the government's position is untenable in light of the court's express holding that "*Miranda* makes this confession subject to suppression." Record, vol. 2, at 149.

Second, the government argues that the district court wrongfully neglected to address the key issues regarding attenuation and waiver. This contention likewise has no merit in light of our holding that the case is not controlled by *Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963), and its progeny. Furthermore, we find that, even though the court did not mention the word "waiver," its discussion of the issue of denial of counsel was implicitly directed at the issue of waiver also. Therefore, the record is more than adequate to support the district court's order.

The suppression order is AFFIRMED.

---

quest by the accused for counsel in *Nash* was indecisive. After he had asked for appointed counsel, the accused equivocated by expressing a desire to talk about the crime: "I kinda, you know, wanted, you know, to talk about it, you know, to kinda, you know, try to get it straightened out." *Id.* at 658. We affirmed the admission of a subsequent incriminating statement on the basis that further inquiry was justified in order to ascertain the wishes of the accused. In contrast, the request for counsel by Gomez in this case was clear and unequivocal.

6. *United States v. Grady,* 423 F.2d 1091 (5th Cir. 1970), relied upon by the government, does not hold to the contrary. In that case, the accused asked for counsel and none was furnished. Twelve hours later, after renewed warnings, the defendant confessed. The intervening time period was just one factor considered by the court in concluding that the accused "made the incriminating statements freely and voluntarily with a full understanding of his constitutional rights." *Id.* at 1093.

7. It goes without saying that a valid waiver will not be presumed simply from the fact that a confession was in fact eventually obtained, *Miranda, supra,* 384 U.S. at 475, 86 S.Ct. 1602, or that the *Miranda* warnings were again given and purportedly understood by the accused prior to the confession, *Massey, supra,* 550 F.2d at 308.

8. *Compare United States v. Cavallino, supra,* 498 F.2d at 1202 (where testimony indicated that the accused had been "this route before" and knew "his rights," in apparent reference to his prior conviction and imprisonment).