378 So.2d 1361 (1979)
STATE of Louisiana
v.
Donald Lee DANIEL.
No. 63515.
Supreme Court of Louisiana.
September 4, 1979.
*1363 George H. Tyson, Jr., Michael Ramsey, Houston, Tex., Robert F. DeJean, Sr., Opelousas, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Morgan J. Goudeau, III, Dist. Atty., Robert Brinkman, Asst. Dist. Atty., for plaintiff-appellee.
SUMMERS, Chief Justice.
The Grand Jury of St. Landry Parish charged that Donald Lee Daniel committed first degree murder of David Hargroder and Brenda Rash on April 30, 1976. La. Rev.Stat. 14:30. Subsequently the State filed an amended indictment charging Daniel with two counts of second degree murder under Section 30.1 of Title 14 of the Revised Statutes, which at the time, provided for specific intent killings. See Act 380 of 1975.
Daniel was tried by a jury, found guilty on both counts, and sentenced to imprisonment at hard labor for life on each count, without the benefit of parole, probation or suspension of sentence for forty years, the sentences to run concurrently.
Assignments 1, 2 and 3: These assignments are grouped for argument in brief and relate to alleged juror misconduct. The first assignment of error, which the defense brief characterizes as "by far the most prejudicial", is based upon the fact that during the trial, while they were in the hall of the courthouse during a recess, two of the jurors, Walter Kimble and Jeff Boudreaux, were approached by Flossie Hargroder, a State witness who was the mother of David Hargroder, one of the victims. She asked Boudreaux if he knew her son. Boudreaux replied that he did not, at which time the victim's mother "flashed" a photograph of the victim and said "this is him." Both Kimble and Boudreaux were unable to avoid looking at the photograph, but walked away, at which time Flossie Hargroder hastily returned the photograph to her purse.
On the basis of this encounter, and the assertion that neither Kimbel nor Boudreaux reported the incident to the trial judge, although they had been admonished to report any such contact, and the fact that the photograph had not been introduced into evidence, the defense charges Kimble and Boudreaux with misconduct as jurors. As a result, the defense contends defendant was denied his constitutional right to a trial by a fair and impartial jury. Accordingly defendant moved for a new trial.
At the hearing on the motion Kimble testified that viewing the photograph had no effect on his judgment and that he only considered the evidence presented in court. He did acknowledge, however, that during the course of the trial he may have had short conversations with Flossie Hargroder in the hall near the courtroom. These conversations, however, were in the presence of many other people in the hall and did not pertain to the case.
*1364 Jeff Boudreaux corroborated Kimble's version of the incident involving the photograph. He described it as a "school picture", a bust photograph of the victim prior to his death.
It is noted that the jury in this case was not sequestered during the trial until they received the judge's charge. La.Code Crim. Pro. art. 791. They were permitted to return home at night and to converse with others in the hall during recesses while the trial was in progress. They were admonished, however, not to talk to anyone about the case. Kimble and Boudreaux testified that they heeded this admonition, and there is no showing that there was any conversation with anyone about the case.
In his per curiam to this assignment the trial judge stated that the contacts between Kimble, Boudreaux and Flossie Hargroder were chance encounters of no moment. He did consider the exhibition of the photograph in a more serious light, concluding, however, that it worked no injustice to defendant and did not deny him a fair trial by an impartial jury. He based his conclusion on the fact that the photograph depicted the victim prior to his death and it was not gruesome; it was not of an evidentiary nature; the jury had no discretion in the punishment imposed in this case; the evidence of guilt was "extremely strong"; and Acadian people customarily preserve and exhibit photographs to revere their dead and console themselves. The trial judge was aware that Flossie Hargroder was in the habit of showing her son's photograph, and he felt quite certain that she had "nothing other than an innocent intent in exhibiting it as she did." These findings are consonant with the record in this case and the ruling of the trial judge is entitled to great weight.
Thus we have for consideration casual communications between a witness and two unsequestered jurors. In State v. Dotson, 260 La. 471, 256 So.2d 594 (1972), cert. denied 409 U.S. 913, 93 S.Ct. 242, 34 L.Ed.2d 173, this Court stated that communications between jurors and a witness in a criminal trial without a showing that the defendant was prejudiced furnishes no ground for upsetting a conviction. This was recognized as the majority rule and these authorities were cited to support the Court's adherence to the rule. State v. Nails, 255 La. 1070, 234 So.2d 184 (1970); State v. Johnson, 149 La. 922, 90 So. 257 (1921); State v. Miles, 364 S.W.2d 532 (Mo.1963); 9 A.L.R.3d 1275, Prejudicial Effect, In Criminal Case, of Communications Between Witnesses and Jurors.
The rule that prejudice must be shown to upset a conviction because of juror misconduct was again restated in our decision in State v. Cooper, 334 So.2d 211 (La.1976).
Representative of defendant's claim of prejudice is the statement that the display of the photograph by Flossie Hargroder had a "subtle, albeit substantial, effect ... on Boudreaux and Kimble." Another is that the frequency of contacts between the two jurors "indicates at least suspicious circumstances and probably a substantial bias on the part of the jurors." There is no showing of prejudice in this record only the general and unsubstantiated assertions of the defense. Nor does the defense intimate that these encounters were motivated by a desire to prejudice the defendant by influencing the jurors' verdict; to the contrary, defense counsel in brief disclaims such a contention. In these matters we do not deal in speculation and conjecture. Rules of law and facts are the best guarantee of fairness and justice for the accused and for the State.
In brief the defense argues that the failure of the juror Boudreaux to inform defense counsel on voir dire that he had a casual acquaintance with Flossie Hargroder demonstrates Boudreaux's partiality. Although Boudreaux's alleged misconduct in this respect is not alleged as a ground for a new trial as required by Articles 851(4) and 855 of the Code of Criminal Procedure, the State meets the issue, citing State v. Hall, 255 La. 854, 233 So.2d 541 (1970), for the holding that where an accused relies upon the disqualification of a juror as a basis for a new trial, he must show he questioned the juror on voir dire examination concerning *1365 the subject and the juror failed to disclose the relevant facts. Such a showing is essential to satisfy the requirement of reasonable diligence contained in Article 851(4) which mandates a new trial when
"The defendant has discovered, since the verdict or judgment of guilty, a prejudicial error or defect in the proceedings that, notwithstanding the exercise of reasonable diligence by the defendant, was not discovered before the verdict or judgment;..."
While he was being cross-examined at the hearing on the motion for a new trial by defense counsel, Boudreaux admitted that he had been to Flossie's place "off and on, a few times." Counsel immediately challenged Boudreaux with his failure to disclose that fact in response to counsel's inquiry on voir dire whether he knew Flossie Hargroder, one of the persons named on the State's witness list, a list from which counsel read quickly. The juror explained, "... I don't know her you know. I mean I just know her because I'd stop in and get a beer. That's it [on voir dire] you told us if we knew her real personally." The confusion is cleared up when it is known that Flossie Hargroder was the proprietor of "Flossie's Place", a bar and lounge in the community which Boudreaux had patronized several times.
While Boudreaux's explanation appears from the record to be a reasonable misunderstanding of defense counsel's hurried probing of the State's witness list, it is also obvious that a disclosure that he was acquainted with Flossie Hargroder would not ipso facto disqualify him from serving as a juror. The connection must be such that one might reasonably conclude that it would influence the juror in arriving at a verdict. Article 797(3) of the Code of Criminal Procedure so provides when it prescribes the grounds for challenge for cause. One of the grounds being that:

. . . . . .
"(3) The relationship, whether by blood, marriage, employment, friendship, or enmity between the juror and the defendant, the person injured by the offense, the district attorney, or defense counsel, is such that it is reasonable to conclude that it would influence the juror in arriving at a verdict,"

. . . . . .
See also State v. Crochet, 354 So.2d 1288 (La.1977); State v. Robinson, 353 So.2d 1001 (La.1977); State v. Gray, 351 So.2d 448 (La. 1977); State v. Anthony, 347 So.2d 483 (La. 1977); State v. Jones, 345 So.2d 1157 (La. 1977); State v. Madison, 345 So.2d 485 (La. 1977) and the cases cited in these decisions.
Here Boudreaux made clear that his acquaintance with Flossie Hargroder was of the most casual sort, and there was no testimony to the contrary. Even if counsel had properly presented the issue in the motion for a new trial, there is no merit to his contention that Boudreaux's casual acquaintance with Flossie Hargroder was such that he could not act impartially.
Assignment 4: In a motion to quash defendant asserts that Section 30.1 of Title 14 of the Revised Statutes, the statute under which he stands charged, is unconstitutional. The motion alleges that the statute violates the Eighth Amendment to the Constitution of the United States and Section 20 of Article I of the Louisiana Constitution, because the mandatory sentence for conviction of murder in the second degree is life imprisonment and no discretion is permitted in the imposition of that sentence. For these reasons defendant's motion to quash asserts the imposition of such a sentence is cruel and unusual punishment.
Although conceding that this Court has upheld the constitutionality of this statute in State v. Brooks, 350 So.2d 1174 (La.1977), defendant urges the Court to overrule that decision. It is suggested that this Court require a method of punishment whereby mitigating circumstances and unusual factors in a case would be given consideration in imposing sentence. No support is offered for this position. Brooks therefore remains dispositive.
Assignments 5, 6 and 8: Not argued. Not briefed.
*1366 Assignments 7, 14, 17 and 18: As a result of a confession by defendant, the State obtained information relating to a gun and shells which were introduced into evidence. Defendant filed a motion to suppress the confession because the police failed to administer the Miranda warning and to heed defendant's refusal to talk to them. The motion to suppress was sustained, except that, according to defendant the trial judge orally permitted the use of the confession by the State for impeachment purposes. Defense counsel concedes that the confession was made voluntarily in the traditional sense, but defendant's Miranda rights were violated. The State takes the position that the confession was voluntary and failing in this, no prejudice to the defendant occurred as a result of the confession. It was never used in evidence and no mention was ever made that defendant gave a confession or that the shotgun and shells were found because of the information revealed in the confession.
During the early morning hours on May 1, 1976 defendant was brought to the Opelousas Police Department to give a statement in connection with the investigation of the killing of David Hargroder and Brenda Rash. At that time the investigation centered on one Danny Thrasher, a juvenile. As the investigation progressed statements of other witnesses disclosed that defendant was the killer.
About 7:30 that morning defendant was brought into a detective's office where several police and Assistant District Attorney Robert Brinkman were present. Defendant was read his Miranda warnings from a written document by Officer Mallet. Reading from the document Mallet further asked defendant, "Having these rights in mind, do you wish to talk to us now?" Defendant responded with a "weak mild no." Mallet then entered the response in a blank space on the document and the document was signed by defendant and witnessed by three of the officers present.
Because of defendant's indecisive negative response, Brinkman then told defendant: "[B]efore you make up your mind one way or the other as to whether or not you want to talk to us, let me tell you what we've got." He then informed the defendant that Doucas and Thrower (an eyewitness to the crime) had pointed to defendant as the perpetrator of the double murder. Brinkman's adjuration was not overbearing. Confronted with this information defendant then related the story of the killings to the officers. He later led them to the Boagni Swamp where shells and the murder weapon, a shotgun, were found. Defendant's election to confess was neither forced nor induced.
On these facts we believe the trial judge should have denied the motion to suppress. Nothing in Miranda prevents an accused party from changing his mind and giving a statement after he has previously declined to do so, so long as the statement is voluntary and intelligently made. Michigan v. Mosley, 423 U.S. 96, 96 S.Ct. 321, 46 L.Ed.2d 313 (1975); Nash v. Estelle, 560 F.2d 652 (5th Cir. 1977); State v. Strahan, 348 So.2d 79 (La.1977); State v. Peevy, 321 So.2d 324 (La.1975). In Mosley the Court said:
"... [A] blanket prohibition against the taking of voluntary statements or a permanent immunity from further interrogation, regardless of the circumstances, would transform Miranda safeguards into wholly irrational obstacles to legitimate police investigative activity, and deprive suspects of an opportunity to make informed and intelligent assessments of their interests."
The Mosley decision has been understood to mean that Miranda should not be construed to create a per se proscription of an indefinite duration upon further custodial interrogation of a defendant who asserts his right to remain silent. And an unrealistic approach to the concept of waiver of these rights can produce anomalous results; therefore, a pragmatic approach is dictated on a case-by-case basis: United States v. Rodriguez-Gastelum, 569 F.2d 482 (9th Cir. 1978).
*1367 Added to our conviction that the confession was admissible is our further persuasion that notwithstanding the confession's inadmissibility it is not error to admit the evidence obtained as a result of the confession. The taint which may have attached to the gun and shells and other physical objects obtained and introduced into evidence from information derived from the confession was attenuated by other evidence at the trial.
The shotgun was a .410 gauge. Thomas Newton Andrus, Jr., testified that before the killings on the night of April 30, 1976, defendant borrowed a .410 shotgun and shells from him. Spent .410 caliber shells were recovered at the site where the dead Rash girl was found. Spent .410 shells were also found at the Andrus residence. He testified they were fired from the gun borrowed by defendant. Expert testimony established that all of these spent shells were fired from the same gun. This cumulative evidence relegated the introduction of the gun and shells to the position of corroborative evidence. In view of the "strong" evidence of guilt otherwise properly admitted, this corroborative evidence was greatly attenuated. No substantial rights of the accused were denied and reversal is not warranted. La.Code Crim.Pro. art. 921. In addition, as already mentioned no reference to the confession was made at the trial.
Assignment 8: Not argued or briefed.
Assignments 9, 10, and 15: After three persons had testified as witnesses for the State, defense counsel requested in each instance that the trial judge order the State to furnish defense counsel with their previously recorded statements for use in cross-examination. Alternatively, he requested that the judge conduct an in-camera inspection of the statements to ascertain if the statements contained exculpatory material or material useful for cross-examination. The defense relies upon Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) and its progeny. The request was denied.
Regardless of other issues presented by these assignments, reference to the statements which have been submitted by defendant as sealed documents for inspection by this Court disclose that there are no inconsistencies with the trial testimony of the witnesses. There are no statements which are exculpatory and material to guilt or punishment. See State v. Johnson, 261 La. 620, 260 So.2d 645 (1972).
These assignments are without merit.
Assignments 11 and 16: In cross-examining the State's witness Danny Thrower the defense established that he was then on probation for an offense as a juvenile. Also defense counsel was permitted to elicit testimony that the State had granted Thrower immunity from prosecution in exchange for his testimony. Defense counsel then attempted to delve into Thrower's juvenile record and to have that record admitted into evidence. The declared intention of defense counsel was to use the information obtained from the juvenile record to impeach the credibility of the witness by showing a "propensity to violence" if such were disclosed by an inquiry into the juvenile record. The trial judge ruled that the details of the offense could not be obtained from the juvenile record and the record could not be introduced into evidence.
At the outset it is relevant to observe that no adjudication by the court upon the status of any child shall be deemed to make the child a criminal, nor shall such adjudication be deemed a conviction. La.Rev.Stat. 13:1580.
Also pertinent to the ruling of the trial judge is the statute which provides that all information obtained by the court in cases of children shall be privileged and not subject to public inspection. La.Rev.Stat. 13:1586.
In his per curiam the trial judge stated that he declined to allow a detailed inquiry into Thrower's juvenile record as an accommodation between this State's requirement of confidentiality of juvenile records and defendant's right to confront and cross-examine the witnesses against him as *1368 set forth in Davis v. Alaska, 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974). Having permitted the defense to establish that the juvenile was on probation and that immunity had been granted by the State, in order to enable the defense to support a claim of probable bias, the trial judge felt that further inquiry into the juvenile record would have unnecessarily violated confidentiality. He was also of the opinion that such a disclosure would have created confusion and prejudice without further serving the constitutional value enunciated in the Davis case. In his view, because a juvenile adjudication does not operate as a conviction, there was no right to impeach this witness by a showing of adjudication, citing State v. Roberts, 331 So.2d 11 (La.1976), rev'd. on other grounds, Roberts v. Louisiana, 431 U.S. 633, 97 S.Ct. 1993, 52 L.Ed.2d 637 (1977). This case decided that juvenile adjudication may not be used to impeach a witness' general credibility under R.S. 15:495, although under Davis the results of the offense remain available for use on cross-examination.
Davis v. Alaska stands for the proposition that the Sixth Amendment's right to confrontation of witnesses requires that a defendant in a criminal case be allowed to impeach the credibility of a prosecuting witness by cross-examination directed at possible bias arising from the witness' probationary status as a juvenile delinquent, notwithstanding that such impeachment would conflict with the State's asserted interest in preserving the confidentiality of juvenile delinquency adjudications.
The ruling of the trial judge recognized this limited right to disclose the witness' probationary status and permitted defense counsel to make that showing. The request to delve further into the juvenile record to show a propensity to violence would have been unavailing because the juvenile record sent to this Court under seal discloses no such propensity. Thus, no prejudice to the defense resulted from the ruling.
These assignments are without merit.
Assignment 12: A claim that defendant was unduly restricted in his right to cross-examine a state witness is asserted here.
On recross-examination defense counsel sought to ascertain from the state's witness Thrower whether he had run away when a trial date in the case was previously scheduled and had to be called off when he failed to report. The prosecutor objected that the subject had not been brought out on direct, and the objection was sustained. Thereafter, out of the presence of the jury, defense counsel examined the witness to record an offer of proof.
It developed from this interrogation that Thrower had received no summons to appear as a witness on that occasion. Notwithstanding this explanation of Thrower's failure to appear at the prior fixing, counsel elicited from Thrower the fact that he had traveled to Oklahoma during that time with the judge's approval to live with his grandmother. While he was there he received several calls from the authorities in Louisiana advising him of trial dates and calls letting him know that the trial date had been set aside. However, he received no notice of the fixing of the case on the occasion when he did not appear to testify.
Defense counsel contends that he should have been permitted to question Thrower before the jury about what he termed Thrower's "run away". Evidence of the so-called "run away", it is argued, would tend to show bias, interest or corruption of the witness. Section 492 of Title 15 of the Revised Statutes and State v. Kellogg, 350 So.2d 656 (La.1977) are cited in support of the defense contention.
Section 492 permits the questioning of a witness as to any particular fact tending to show bias, interest or corruption. The Kellogg Case, relying upon Section 492, the statutory right to full cross-examination, La.Rev.Stat. 15:280, and the constitutional right of confrontation, La.Const. art. I, § 16, stated that the jurisprudence permits full cross-examination in order to expose any bias or interest of the witness which might influence his perceptions or color his testimony.
Aside from the failure of the defense to point out how this claimed "run away" testimony *1369 would disclose bias, interest or corruption in the witness against this defendant, the offer of proof does not show that Thrower ran away. To the contrary, according to his testimony while he was on probation he traveled to Oklahoma with the judge's permission to visit his grandmother. Furthermore, the offer of proof does not contradict Thrower's statement that he had no notice of the aborted trial date. Failure to permit this evidence, therefore, did not prejudice defendant and its denial was permissible in the trial judge's discretion under Section 281 of Title 15 of the Revised Statutes, requiring that recross-examination be confined to matters brought out on redirect. This assignment has no merit.
Assignment 13: Refusal of the trial judge to allow defense counsel to examine the prior statement of the witness George Doucas, even though Doucas admitted that he made a statement to the police which contradicted his testimony at trial, is assigned as error.
The statement has been submitted to this court under seal for review. It discloses that Doucas at first denied any knowledge of the crime but later, after questioning, related a story in keeping with his testimony at trial. There was no obligation of the State to surrender the witness' pretrial statement under these circumstances. State v. Breaux, 366 So.2d 1375 (La.1978); State v. Lovett, 359 So.2d 163 (La.1978); State v. Sheppard, 350 So.2d 615 (La.1977).
For the reasons assigned the conviction and sentence are affirmed.
TATE, J., is of the opinion that the trial court correctly suppressed the confession, but that the fruits of it may have been admissible as discoverable without the confession. See Brewer v. Williams, 430 U.S. 387, 97 S.Ct. 1232, 51 L.Ed.2d 424 (1977), and he therefore concurs.
DIXON and DENNIS, JJ., concur in the result.
CALOGERO, J., concurs being concerned with majority's treatment of Assignment of Error # 5.