UNITED STATES of America, Plaintiff,

v.

Salvatore PRESTIGIACOMO, Defendant.

No. 80 CR 578.

United States District Court,
E. D. New York.

Jan. 5, 1981.

Edward R. Korman, U. S. Atty., Brooklyn, N. Y. (David V. Kirby, Asst. U. S. Atty., Brooklyn, N. Y., of counsel), for plaintiff.

Ronald P. Fischetti, New York City, for defendant.

MEMORANDUM AND ORDER

NICKERSON, District Judge.

Defendant was indicted in two counts for importing and for possessing with intent to distribute ten pounds of heroin, in violation of 21 U.S.C. Sections 952(a), 960(a)(1) and 841(a)(1). He has moved to suppress certain statements made while he was under arrest, on the grounds that they were obtained in violation of his Fifth Amendment privilege against self-incrimination and that they were "involuntary". The court conducted a pre-trial hearing on December 15th and 16th, 1980, and now determines that certain of the statements should be suppressed.

Defendant was arrested shortly after 6:00 P.M. on October 22, 1980 following a customs inspection at John F. Kennedy Airport. He had arrived on a flight from Rome, Italy, and customs inspectors found heroin inside two olive oil cans in his suitcase. Senior Customs Inspector Frank Giordano was called to the scene to act as an interpreter and to place defendant under arrest. Defendant speaks no English. Giordano speaks both Italian and the Sicilian dialect.

Giordano reported to the so-called search room where defendant was with Drug Enforcement Administration Agent Giaimo and Customs Inspector Quagliato. At Giaimo's direction Giordano told defendant in Italian that he was under arrest for smuggling heroin into the United States. Giordano then recited the *Miranda* warnings in Italian, translated from a card on which the warnings were printed in English. Defendant said he understood his rights, and answered affirmatively when asked if he elected to waive them.

Giordano then said he was going to ask defendant a few questions. In answer to Giordano's queries, defendant said the cans contained olive oil and had been given to him by somebody named Finazzo. After he mentioned the name of Finazzo defendant said, "Maybe it would be good to have a lawyer."

At this point Giordano did not ask defendant whether or not he then wished a lawyer present. On direct examination Giordano remembered saying: "You may have a lawyer if you request one. A lawyer will be appointed.... [I]f you don't have to say anything, you may keep silent. (sic) You don't have to say a word." On cross-examination Giordano recalled his words somewhat differently: "I told him, if he wants to have a lawyer, a lawyer will be provided to him. Not right there, in due time, I guess. But no questioning was asked of him without the lawyer if he requested one." Giordano testified that no attempt was made to get defendant a lawyer, and that "[i]t was up to him to request one."

Giordano did not pause further to clarify the meaning of defendant's statement that "maybe it would be good to have a lawyer." Instead, Giordano asked defendant if he was willing to answer any more questions and, on receiving an affirmative reply, continued the interrogation. Defendant then stated that Finazzo, a Sicilian farmer, knew defendant was going to visit his aunt and uncle in New York and had asked defendant to bring some olive oil to a person in New York whose name defendant did not know but who would contact the house of the aunt and uncle to retrieve the cans.

About 7:00 P.M. defendant was taken to the DEA office in the airport. Giordano then searched defendant's coat and found a notebook containing, among other things, two names with New York telephone numbers. Giordano questioned defendant about these names, and defendant replied that one, Salvatore Dimaggio, was his uncle, and the other, Rosario Troia, was unknown to him. Thereafter, Giordano received from a DEA agent a form containing the *Miranda* warnings in Italian. Giordano recited them to defendant, who read the form and signed it, saying he understood and would answer questions.

Later in the evening defendant's aunt, Ms. Dimaggio, accompanied by her husband and brother, all of whom had been at the airport awaiting defendant's arrival, came to the DEA area. Using Ms. Dimaggio as interpreter, the DEA agents elicited further details from defendant concerning Finazzo and his delivery of the cans to defendant. Defendant also agreed to make some tape recorded calls to Italy concerning the cans, to attempt to make a controlled delivery, and to waive his right to a speedy arraignment. Defendant signed such a waiver.

Defendant argues that after he said "maybe it would be good to have a lawyer" all questioning should have ceased until an attorney was present. The pertinent language in *Miranda v. Arizona*, 384 U.S. 436, 444–45, 86 S.Ct. 1602, 1612–13, 16 L.Ed.2d 694 (1966), states: "If, however, he [the defendant] indicates in any manner and at any stage of the process that he wishes to

consult with an attorney before speaking there can be no questioning." "If the individual states that he wants an attorney, the interrogation must cease until an attorney is present." *Id.* at 474, 86 S.Ct. at 1627. As the Supreme Court said in *Fare v. Michael C.*, 442 U.S. 707, 719, 99 S.Ct. 2560, 2568, 61 L.Ed.2d 197 (1979), "the Court fashioned in *Miranda* the rigid rule that an accused's request for an attorney is *per se* an invocation of his Fifth Amendment rights, requiring that all interrogation cease." Of course, the defendant may waive his right to an attorney, provided he does so "voluntarily, knowingly and intelligently." *Miranda v. Arizona, supra*, 384 U.S. at 444, 86 S.Ct. at 1612.

Defendant contends that the words he used should be interpreted as an unequivocal request for counsel and that, even if they be deemed equivocal, Giordano could ask no further questions except such as sought to clarify defendant's meaning. The government urges that defendant's request was at best equivocal, that the "purpose" of Giordano's response was to ascertain whether defendant in fact wished to have counsel, and that by agreeing to answer further questions defendant waived his right to counsel.

Three issues are before the court. First, did the defendant make an unequivocal request for counsel? Second, if the request was equivocal, what questions, if any, was it proper for Giordano to ask? Third, did defendant waive his right to counsel by answering Giordano's later questions?

■ Under the circumstances of this case defendant's statement "maybe it would be good to have a lawyer" was a sufficient request for counsel. The decision in the *Miranda* case does not require a suspect to adopt any particular wording to manifest his wishes. It is enough if the suspect "indicates in any manner" that "he wishes to consult with an attorney." At that moment there can be no further questioning. *Miranda v. Arizona, supra*, 384 U.S. at 444–45, 86 S.Ct. at 1612–13. Defendant was in a strange country, spoke no English and was undoubtedly unfamiliar with the rights of

the accused under American law. *See Government of Canal Zone v. Gomez*, 566 F.2d 1289, 1292 (5th Cir. 1978). It would hardly be fair to require such a suspect to formulate his desire for legal assistance in more formal or precise terms.

In *Maglio v. Jago*, 580 F.2d 202, 205 (6th Cir. 1978), the court had little difficulty in finding that a sixteen year old was attempting to assert his right to counsel when he said "maybe I should have an attorney." In *White v. Finkbeiner*, 611 F.2d 186 (7th Cir. 1979), the words "I'd rather see an attorney" were treated as a request for counsel. When a suspect said "I had better talk to a lawyer" the Fourth Circuit held he had made a sufficient request. *United States v. Clark*, 499 F.2d 802 (4th Cir. 1974).

These decisions, particularly the *Maglio* case, suggest that the words "maybe it would be good to have a lawyer," used by a foreigner unfamiliar with the English language and American law, were adequate to require Giordano to cease questioning until counsel was obtained.

Even if such words are equivocal as to whether or not the suspect wishes to have counsel, the sensible rule is that the only questions the police may ask are those which seek to clarify the suspect's desires. Had Giordano simply asked defendant whether or not he then wished to have an attorney present and defendant had responded he did not, a different case would be presented. *See Nash v. Estelle*, 597 F.2d 513, 517 (5th Cir.), *cert. denied*, 444 U.S. 981, 100 S.Ct. 485, 62 L.Ed.2d 409 (1979).

But Giordano did not do that. Instead he treated defendant's words as inadequate to request legal assistance. Giordano told defendant that, if he wanted a lawyer, one would be provided, "[n]ot right there, in due time, I guess." Giordano repeated that defendant need not say anything, and then, without pausing to enable defendant to clarify whether or not he then wished counsel, asked him if he was willing to answer more questions.

Giordano's statements and questions cannot fairly be interpreted as a mere attempt

to make defendant's wishes plain. Defendant was never asked "Do you or do you not wish an attorney present during questioning?" Instead, Giordano gave the impression that what defendant said would not be treated as a sign, albeit an equivocal one, that he wished a lawyer. Giordano's assumption was that it was up to defendant to make some kind of formal request. The *Miranda* case does not impose such a requirement. A suspect may indicate his desire for counsel "in any manner."

■ The circumstances under which defendant answered Giordano's further questions show that defendant did not waive his right to counsel. The government has the burden of showing an intentional relinquishment or abandonment of that right, and the courts indulge in every reasonable presumption against waiver. *Brewer v. Williams*, 430 U.S. 387, 404, 97 S.Ct. 1232, 1242, 51 L.Ed.2d 424 (1977); *Miranda v. Arizona, supra*, 384 U.S. at 475, 86 S.Ct. at 1628. ,

■ Here defendant never said he did not wish a lawyer. *Cf. Nash v. Estelle, supra*, 597 F.2d at 517 (did not want a lawyer "right now"); *White v. Finkbeiner, supra*, 611 F.2d at 189 ("I don't need a lawyer"). There was no significant lapse of time between defendant's stating "Maybe it would be good to have a lawyer," and the resumption of questioning by Giordano. *Government of Canal Zone v. Gomez, supra*, 566 F.2d at 1291–92 (no waiver even when questioning renewed twenty-four hours later). Giordano, not defendant, initiated the resumption of questioning. *United States v. Clark, supra*, 499 F.2d at 807 (no waiver where Federal Bureau of Investigation initiated further talks four hours after defendant said, "I had better talk to a lawyer"); *Cf. Cobbs v. Robinson*, 528 F.2d 1331, 1342 (2d Cir. 1975), *cert. denied*, 424 U.S. 947, 96 S.Ct. 1419, 47 L.Ed.2d 354 (1976) (waiver where, some time after requesting counsel, suspect confessed after being told by grandmother to tell the truth).

In this case defendant, a foreigner speaking only in a foreign tongue, cannot be said to have made the deliberate and intelligent waiver contemplated by the *Miranda* case.

The motion to suppress the statements subsequent to defendant's saying "maybe it would be good to have a lawyer" is granted.

The foregoing constitutes the court's findings of fact and conclusions of law.

So ordered.