748 So.2d 1220 (1999)
STATE of Louisiana
v.
Kerry WINDHAM.
No. 99-KA-637.
Court of Appeal of Louisiana, Fifth Circuit.
November 30, 1999.
*1221 Paul D. Connick, Jr., District Attorney, Terry Boudreaux, Assistant District Attorney, Gretna, Louisiana, Attorney for Appellee.
Frederick Kroenke, Baton Rouge, Louisiana, Attorney for Appellant.
Panel composed of Judges CHARLES GRISBAUM, Jr., JAMES L. CANNELLA and MARION F. EDWARDS.
EDWARDS, Judge.
Defendant Kerry Windham appeals his sentence following his conviction of attempted simple burglary, a violation of LSA-R.S. 14:27:62. Windham was tried and convicted by a six person jury and sentenced to serve six years at hard labor, with credit for time served.
Following a hearing on a multiple offender bill of information filed by the state, *1222 Windham was adjudicated a fourth felony offender and was subsequently given life imprisonment without benefits. That sentence was vacated on appeal to this court[1] on our finding that the state had failed to introduce sufficient evidence to prove the existence of a 1988 predicate felony.
On remand, at a subsequent hearing, the state proved the existence of all of the predicate felonies. The trial judge found Windham to be a fourth felony offender and again imposed a sentence of life imprisonment without benefits. We affirm as follows.
The underlying facts were summarized in our original opinion[2] and need not be repeated here.

ASSIGNMENT OF ERROR NUMBER ONE
Windham contends that his life sentence is constitutionally excessive and the trial judge had the duty to reduce his sentence.[3] He also contends that the trial judge failed to articulate reasons for sentence as required by LSA-C.Cr.P. art. 894.1.
Windham was found to be a fourth felony offender because he pled guilty in 1980 to armed robbery, was convicted in 1988 of committing simple burglary of an inhabited dwelling, pled guilty in 1996 to felony theft of goods, and was convicted in 1997 of the underlying offense of attempted simple burglary. Because the predicate felony of armed robbery is defined as a crime of violence in LSA-R.S. 14:2(13), the Habitual Offender Law prescribes a mandatory sentence of life imprisonment without benefit of parole, probation or suspension of sentence. See LSA-R.S. 15:529.1(A)(1)(c)(ii); LSA-R.S. 14:2(13)(w).
Windham acknowledges in his brief that his sentence was mandatory, and admits that he is a "recidivist." He urges that under the jurisprudence, his sentence is constitutionally excessive.[4]
A sentence is generally considered to be excessive if it is grossly disproportionate to the offense or imposes needless pain and suffering.[5] Generally, in reviewing a sentence for excessiveness, the appellate court must consider the punishment in light of the harm to society and gauge whether the penalty is so disproportionate as to shock its sense of justice. The trial judge is afforded wide discretion in determining a sentence, and the court of appeal will not set aside a sentence for excessiveness if the record supports the sentence imposed.[6] LSC.Cr.P. art. 881.4(D).
The Louisiana Supreme Court has recognized that a mandatory minimum sentence under the Habitual Offender Law may still be reviewed for constitutional excessiveness.[7] A trial court must reduce a defendant's sentence to one not constitutionally excessive if the trial court finds that the sentence mandated by the Habitual Offender Law makes no measurable contribution to acceptable goals of punishment.
However, "a sentencing judge must always start with the presumption that a mandatory minimum sentence under the Habitual Offender Law is constitutional. A court may only depart from the minimum sentence if it finds that there is clear and convincing evidence in the particular case before it which would rebut this presumption of constitutionality."[8]
*1223 In order to rebut the presumption of constitutionality, a defendant must show that,
[h]e is exceptional, which in this context means that because of unusual circumstances this defendant is a victim of the legislature's failure to assign sentences that are meaningfully tailored to the culpability of the offender, the gravity of the offense and the circumstances of the case.[9]
On appeal, Windham urges that the mandatory minimum life sentence is unconstitutional as applied to him because of his failing health. He claims he has kidney disease, which requires dialysis treatment, and that he suffers hip inflammation, as well as the lack of use of one arm. He relies on his health problems to rebut the presumption of constitutionality of his mandatory life sentence. While Windham contends that the trial judge failed to take these considerations into account when imposing sentence, the record reflects otherwise. At trial, Windham testified that he had health problems. At both the original sentencing and the first multiple offender sentencing, he urged the court to take his failing health into consideration. Thus, the record reflects that the trial judge was aware of Windham's health conditions. In sentencing Windham to life imprisonment, the trial judge obviously did not find that he had rebutted the presumption of constitutionality.
Windham argues that the trial judge should have reduced his sentence.[10] In Burns, the Fourth Circuit vacated the defendant's life sentence as a fourth felony offender because the court was unable to conclude that the life sentence was not constitutionally excessive as applied to that particular defendant. The defendant in Burns was convicted of the underlying offense of distributing a single rock of crack cocaine. He had two prior convictions for possession of cocaine and one conviction for possession of stolen property. At trial, Burns testified that he was addicted to cocaine. The Fourth Circuit found that, based on the evidence in the record, Burns was driven by his cocaine addiction to sell drugs to support his habit.[11]
The Burns court considered, among other evidence in the record, Burns' age of twenty-five, his family background, his drug addiction, the fact that all of the felonies were non-violent and the fact that there was no evidence he had ever possessed a dangerous weapon.[12] After considering all of the circumstances of the case, the Burns court vacated the life sentence, reasoning, "[W]e are unable to conclude that this life sentence is not excessive under the constitutional standard. We therefore affirm defendant's conviction and habitual offender adjudication, vacate the sentence and remand for resentencing in accordance with the views expressed herein."[13]
But the Fourth Circuit declined to extend Burns in State v. Finch.[14] In Finch, the defendant was found to be a third-felony offender and received a life sentence as mandated by the Habitual Offender Law. There the court found that there was no evidence that Finch was a drug addict to explain his possession of drugs, or any testimony suggesting that Finch possessed any redeeming virtues. The court found that despite his young age, Finch failed to meet his burden of showing by clear and convincing evidence that the *1224 mandatory minimum sentence was constitutionally excessive.[15]
The present record reflects that Windham, who was forty-one years old at his multiple offender sentencing on March 3, 1999, has been committing felonies for much of his adult life. His adult criminal history began in 1974, a few months after his eighteenth birthday. The record shows Windham has led a life of crime filled with many arrests and several convictions, ranging from a simple burglary conviction in 1976, to an armed robbery conviction in 1980 and the current conviction of attempted simple burglary.
The judicial system has presented Mr. Windham with many opportunities to refrain from crime, yet he has persisted in committing crimes. After his good-time release from prison in 1986 on the armed robbery conviction, he committed simple burglary of an inhabited dwelling in January 1988, for which he received a sentence of six years at hard labor. Following discharge from prison in January 1994, he committed a theft of goods in 1996, for which he received a suspended sentenced of two years at hard labor, and he was placed on probation. Windham committed the instant offense of attempted simple burglary in January 1997 while on probation from the 1996 offense.
The multiple offender law expresses clear legislative intent. Repeat offenders are to receive serious sentences.[16] It does not appear that Windham's unfortunate medical condition has affected his propensity to commit crimes. Windham has not shown unusual circumstances necessary to successfully rebut the presumption of constitutionality of the mandatory sentence of life imprisonment. In this regard we note that the record shows Windham is a dialysis patient receiving dialysis treatment in prison.
Additionally, while Windham complains that the trial judge failed to articulate reasons for sentence, it was unnecessary for the trial judge to do so because this sentence was mandatory.[17]
Our error patent review has revealed that the trial judge neglected to inform Windham when he was originally sentenced, or when he was sentenced as a multiple offender, of the prescriptive period for applying for post-conviction relief, as required by LSA-C.Cr.P. art. 930.8. The Louisiana Legislature amended article 930.8, effective on August 15, 1999, to shorten the prescriptive period. The amended article, in pertinent part, provides:
A. No application for post-conviction relief, including applications which seek an out-of-time appeal, shall be considered if it is filed more than two years after the judgment of conviction and sentence has become final under the provisions of Article 914 or 922, unless any of the following apply:
. . . .
(3) The application would already be barred by the provisions of this Article, but the application is filed on or before October 1, 2001, and the date on which the application was filed is within three years after the judgment of conviction and sentence has become final.
The application of the amended prescriptive period in Windham's case does not violate ex post facto prohibitions, because article 930.8 does not relate to an offense or its punishment.[18] The district court is instructed to send written notice of the amended prescriptive period to the defendant within ten days of the rendering of this opinion, and then to file written proof *1225 in the record that Windham has received the notice.[19]
For the reasons set out above, defendant's sentence to life imprisonment at hard labor without benefit of parole, probation or suspension of sentence is affirmed. The case is remanded to the trial court to provide proof in the record of defendant's receipt of appropriate notice, under La.C.Cr.P. art. 930.8, of the prescriptive period for post conviction relief.
SENTENCE AFFIRMED; CASE REMANDED WITH INSTRUCTIONS.
NOTES
[1] State v. Windham, 98-100 (La.App. 5th Cir. 5/27/98), 712 So.2d 1057, writ denied, 99-1110 (La.6/4/99), 744 So.2d 627.
[2] State v. Windham, 712 So.2d at 1058.
[3] State v. Dorthey, 623 So.2d 1276 (La.1993).
[4] State v. Dorthey, supra.
[5] State v. Lobato, 603 So.2d 739, 751 (La. 1992); State v. McCorkle, 97-966 (La.App. 5th Cir. 2/25/98), 708 So.2d 1212, 1218.
[6] State v. McCorkle, supra.
[7] State v. Dorthey; State v. Johnson, 97-1906 (La.3/4/98), 709 So.2d 672, 676.
[8] State v. Johnson, 709 So.2d at 676; State v. Medious, 98-419 (La.App. 5th Cir. 11/25/98), 722 So.2d 1086, 1093, writ denied, 98-3201 (La.4/23/99), 742 So.2d 876.
[9] State v. Johnson, at 676 (quoting from State v. Young, 94-1636, pp. 5-6 (La.App. 4th Cir. 10/26/95), 663 So.2d 525, 528, writ denied, 95-3010 (La.3/22/96), 669 So.2d 1223).
[10] Citing State v. Burns, 97-1553 (La.App. 4th Cir. 4/11/98), 723 So.2d 1013, writ denied, 98-3054 (La.4/1/99), 741 So.2d 1282.
[11] Id. at 1019.
[12] Id. at 1019-1020.
[13] Id. at 1020.
[14] State v. Finch, 97-2060 (La.App. 4th Cir. 2/24/99), 730 So.2d 1020.
[15] See also State v. Long, 97-2434 (La.App. 4th Cir. 8/25/99), 744 So.2d 143 wherein the court again declined to extend Burns.
[16] State v. Carter, 96-358 (La.App. 5th Cir. 11/26/96), 685 So.2d 346, 353.
[17] See State v. Haynes, 98-588 (La.App. 5th Cir. 2/23/99), 729 So.2d 104, 109.
[18] See State ex rel. Glover v. State, 93-2330, 94-2101, 94-2197 (La.9/5/95), 660 So.2d 1189, 1201.
[19] See State v. Stelly, 98-578 (La.App. 5th Cir. 12/16/98), 725 So.2d 562.