792 So.2d 926 (2001)
STATE of Louisiana,
v.
Vincent CUSHINELLO.
No. 01-KA-109.
Court of Appeal of Louisiana, Fifth Circuit.
July 30, 2001.
*927 Paul D. Connick, Jr., District Attorney, Terry M. Boudreaux, Churita H. Hansell, Douglas Freese, Assistant District Attorneys, Gretna, LA, Attorneys for Plaintiff/Appellee.
Frederick Kroenke, Louisiana Appellate Project, Baton Rouge, LA, Attorney for Defendant/Appellant.
Panel composed of Judges EDWARD A. DUFRESNE, Jr., SOL GOTHARD, and CLARENCE E. McMANUS.
SOL GOTHARD, Judge.
Defendant, Vincent Cushinello, appeals his conviction and his life sentence at hard labor without benefit of probation, parole, or suspension of sentence as a third felony offender, on a charge of simple criminal damage to property in an amount in excess of $500.00. The following facts were adduced at the trial of this matter.
On the evening of March 21, 2000, someone slashed the tires of cars located at a used car lot, A Wholesale Center, at 9025 Airline Highway in Metairie. The tires of a truck parked next to the used car lot were also slashed.
At trial, the owner of the car lot, Nidal Zeitoun, testified that, at approximately 11:00 p.m., he had returned to the lot to retrieve some paperwork. While he was there, he saw a man walking out of the car lot with a knife "or something" in his hand. After Mr. Zeitoun noticed that some of the tires on the cars had been slashed, Mr. Zeitoun called the police on his cellular phone.
Also on that night, the tires of Roger Villers' truck were slashed. Mr. Villers testified that he had parked his truck on the street next to the used car lot while he went inside the nearby bar, the Escape Lounge. Clint Jouglard and his fiancee, Cara Dean, were also at the bar, and, as they were leaving, they saw that Roger Villers' truck had flat tires. They heard a "hissing" noise, and then saw a man, later identified as the defendant, "pop up" beside the truck. According to Ms. Dean, the man was shoving something in his *928 pocket as he stood up, and then he walked across the parking lot of the bar. Mr. Jouglard decided to return inside the bar to ask Roger Villers if he knew his tires were flat.
Mr. Villers then went outside and discovered that all four of the tires on his truck had been slashed. The man whom Mr. Jouglard had seen next to the truck walked into the bar. As Mr. Villers examined the damage to his truck, he noticed the man exit the bar and called to him. The man ignored Villers and walked toward a nearby Popeye's.
At some point after Mr. Zeitoun and Mr. Villers discovered the damage to their respective vehicles, Mr. Zeitoun and Mr. Jouglard discussed what had happened. Mr. Zeitoun and Mr. Jouglard then followed the man in Mr. Zeitoun's vehicle. Mr. Jouglard testified that he directed Mr. Zeitoun to Popeye's, where it appeared the man had gone. Mr. Jouglard leaped out of the vehicle and traveled on foot to keep the man in sight. He testified that he then flagged down Deputy Modica, the Jefferson Parish Sheriff's Officer who responded to the call.
Deputy Modica testified that after he was flagged down, Ms. Dean told him that the man she had seen earlier was standing at a nearby pay phone. As Deputy Modica approached, he saw the man drop something on the ground. Deputy Modica retrieved the discarded object, which was a pocket knife. The defendant was subsequently arrested.
According to Mr. Zeitoun, 26 tires on nine of the cars had been slashed at his lot, and it cost $1277.00 to replace them. All four of Mr. Villers' tires had been damaged and Mr. Villers spent $250.00 to replace the tires. Neither Mr. Zeitoun nor Mr. Villers had ever met the defendant before.
In this appeal, defendant alleges that the evidence was insufficient to prove the crime charged. He argues that the state failed to prove that he was the person who damaged the tires on Roger Villers' truck and the tires of the cars at A Wholesale Center. The State responds that the evidence was sufficient to prove each element of the offense.
In reviewing the sufficiency of evidence, an appellate court must determine that the evidence, whether direct or circumstantial, or a mixture of both, viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact that all of the elements of the crime have been proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Juluke, 98-0341 (La.1/8/99), 725 So.2d 1291, 1293.
The requirement of LSA-R.S. 15:438 regarding circumstantial evidence does not establish a standard separate from the Jackson standard, but rather provides a helpful methodology for determining the existence of reasonable doubt. Ultimately, all evidence, both direct and circumstantial, must be sufficient to support the conclusion that the defendant is guilty beyond a reasonable doubt. State v. Jones, 98-842 (La.App. 5 Cir. 2/10/99), 729 So.2d 57, 63.
Defendant was charged with simple criminal damage to property in excess of $500.00, in violation of LSA-R.S. 14:56, which reads in pertinent part:
A. Simple criminal damage to property is the intentional damaging of any property of another, without the consent of the owner, and except as provided in R.S. 14:55, by any means other than fire or explosion.
Encompassed in proving the elements of the offense is the necessity of proving the *929 identity of the defendant as the perpetrator. State v. Rowan, 97-21 (La.App. 5 Cir. 4/29/97), 694 So.2d 1052, 1054.
At trial, the State presented testimony that defendant was found in the area where the incident occurred. Mr. Zeitoun testified that when he left the used car lot at 7:00 p.m. on March 21, 2000, the tires of the vehicles were not damaged. He admitted that while he was not "100% sure" that the defendant was the man he saw walking through his car lot with the object in his hand, he was certain that the defendant was the man who was apprehended by the police that night.
Likewise, Ms. Dean testified that she was positive that the defendant was the man she had seen "ducking down trying to hide" beside Roger Villers' truck. Mr. Jouglard testified that he believed the man who stood up next to Roger Villers' truck was the one who had slashed the tires because the tires were still hissing as the man walked away, and positively identified the defendant as this man. Further, Mr. Villers positively identified the defendant at trial as the man he saw walking through the parking lot of the bar after Mr. Jouglard informed him that his tires were flat.
The State also presented testimony regarding physical evidence linking the defendant to the offense. Deputy Modica identified State's Exhibit 5 as the knife the defendant had discarded. He testified that he had compared the blade of the knife with the punctures in all of the tires, and that the punctures were "consistent" with the blade of the knife.
After hearing the testimony and evaluating the credibility of the witnesses, the jury apparently believed that the defendant was the person who committed simple criminal damage to property. Credibility determinations are for the jury, and it is not the function of the appellate court to assess the credibility of witnesses. State v. Ditcharo, 98-1374 (La.App. 5 Cir. 7/27/99), 739 So.2d 957, 966. We find that the evidence presented at trial was sufficient under the Jackson standard to support the defendant's conviction.
The defendant next argues that his life sentence as a third felony offender is constitutionally excessive.
The Eighth Amendment of the United States Constitution and Article I, Section 20 of the Louisiana Constitution prohibit the imposition of excessive or cruel punishment. In State v. Dorthey, 623 So.2d 1276 (La.1993), and more recently, in State v. Johnson, 97-1906 (La.3/4/98), 709 So.2d 672, 676, the Louisiana Supreme Court recognized that a mandatory minimum sentence under the Habitual Offender Law may still be reviewed for constitutional excessiveness.
The Dorthey court specifically held that when a trial court determines the minimum sentence mandated by LSA-R.S. 15:529.1 makes no "`measurable contribution to acceptable goals of punishment'" or that the sentence amounts to nothing more than "`the purposeful imposition of pain and suffering'" and is "`grossly out of proportion to the severity of the crime,'" the trial judge must reduce the sentence to one that would not be constitutionally excessive. State v. Dorthey, 623 So.2d at 1280. However,
"a sentencing judge must always start with the presumption that a mandatory minimum sentence under the Habitual Offender Law is constitutional. A court may only depart from the minimum sentence if it finds that there is clear and convincing evidence in the particular case before it which would rebut this presumption of constitutionality." State v. Johnson, 709 So.2d at 676; State v. Medious, 98-419 (La.App. 5 Cir. 11/25/98), 722 So.2d 1086, 1093, writ denied, *930 98-3201 (La.4/23/99), 742 So.2d 876.
In order to rebut the presumption of constitutionality, the defendant must clearly and convincingly show that he is "exceptional, which ... means that because of unusual circumstances this defendant is a victim of the legislature's failure to assign sentences that are meaningfully tailored to the culpability of the offender, the gravity of the offense and the circumstances of the case." State v. Johnson, 709 So.2d at 676. However, "[a] sentencing court should exercise its authority to declare excessive a minimum sentence mandated by the Habitual Offender Statute only under rare circumstances." State v. Lindsey, 99-3256 (La.10/17/00), 770 So.2d 339, 345.
After the enhanced sentence was imposed, the defendant objected to the sentence as excessive, but did not urge any specific basis for the court to deviate from the mandatory minimum. The defendant now contends that he is exceptional within the meaning of Johnson because there was little evidence linking him to the crime, because the instant offense did not involve violence, and because his previous convictions were nearly 20 years ago. However, after reviewing the evidence of the defendant's predicate offenses presented at the habitual offender hearing, we do not believe that the defendant is the type of "exceptional" individual contemplated by State v. Johnson.
The record reflects that on November 22, 1982, the defendant pled guilty to simple burglary. Approximately five years later, the defendant pled guilty to eight counts of armed robbery and two counts of attempted first degree murder, all of which occurred on November 25, 1986. These offenses arose out of a 21 count bill of information that alleged 16 counts of armed robbery, four counts of attempted first degree murder, and one count of a felon in possession of a firearm. He was sentenced to 21 years at hard labor without benefit of probation, parole, or suspension of sentence, but received an early release in 1999.
According to the Habitual Offender Law, if one of the predicate felonies or the underlying felony is a crime of violence as defined by LSA-R.S. 14:2(13), a life sentence of imprisonment without benefit of probation, parole or suspension of sentence is mandated. In the instant case, the defendant's sentence of life imprisonment without benefit of parole, probation, or suspension of sentence is mandatory because the defendant's second predicate felony is defined a crime of violence. See LSA-R.S. 14:2(13); LSA-R.S. 15:529.1(A)(1)(b)(ii).
Although the defendant contends that his last felony occurred nearly 20 years ago, we note that he was in prison from 1987 until 1999. Less than one year later, he committed the instant offense on March 21, 2000.
Based on the foregoing, we do not believe that defendant has made a showing of exceptional circumstances sufficient to justify a downward departure from the mandatory sentence of life imprisonment. The multiple offender law expresses clear legislative intent. Repeat offenders are to receive serious sentences. State v. Windham, 99-637 (La.App. 5 Cir. 11/30/99), 748 So.2d 1220, 1224. In light of the defendant's criminal history, we find that the defendant is the typical recidivist offender for whom the Habitual Offender Law was designed, and that the mandatory life sentence is not excessive.
We have reviewed the record for errors patent, according to LSA-C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); *931 State v. Weiland, 556 So.2d 175 (La.App. 5 Cir.1990), and note the following.
Initially, the defendant notes in his brief, (although he does not assign error,) that the transcript of sentencing pursuant to the multiple bill fails to show that the trial court vacated the original sentence prior to imposition of the enhanced sentence. However, the minute entry/commitment states that the original sentence has been vacated. In State v. Mayer, 99-3124 (La. App.3/31/00), 760 So.2d 309, the court found that an enhanced sentence in such circumstances was a valid sentence:
To the extent that the ... commitment/minute entry reflects that the trial judge vacated the defendant's original sentence and thereby eliminated any possible confusion as to the terms of the defendant's confinement, the failure of the transcript to show that the court did so before sentencing the defendant as a multiple offender did not affect the substantial rights of the defendant.
See also, State v. Davis, 01-123 (La.App. 5 Cir. 7/30/01), 792 So.2d 126. Accordingly, this error does not merit consideration.
The record reflects that the trial judge correctly advised the defendant of the two-year prescriptive period for post conviction relief at the original sentencing, La.C.Cr. P. art. 930.8(C), but incorrectly told the defendant that the period was three years at the multiple offender sentencing. To ensure that the defendant is aware of the correct time period, we remand this case to the district court and order that the trial judge inform defendant of the provisions of La.C.Cr.P. art. 930.8(C) by sending appropriate written notice to defendant within ten days of the rendition of this opinion and to file written proof that defendant received the notice in the record of these proceedings.
For the above discussed reasons, the defendant's conviction and sentence are affirmed. This matter is remanded and the trial court is ordered to inform defendant of the provisions of La.C.Cr.P. art. 930.8(C) by sending appropriate written notice to defendant within ten days of the rendition of this opinion and to file written proof that defendant received the notice in the record.
AFFIRMED AND REMANDED WITH ORDER.