JUDE G. GRAVOIS, Judge.
12After having been found guilty of public intimidation, the defendant, Paul Pou-part, was adjudicated a fourth felony offender, and was sentenced to twenty years imprisonment. He has appealed his conviction and sentence. For the reasons that follow, we affirm defendant’s conviction and sentence.

FACTS

At trial, Michael Baratinni testified that he is the owner of a bar located in Metair-ie. He stated that Detective Steve Hig-gerson worked at his bar as a detail officer. He explained that a few years before defendant was arrested in this case, Detective Higgerson arrested defendant for an incident that occurred outside of the bar and charged him with battery. Mr. Bara-tinni testified that approximately two days before his trial on the battery charge, defendant went to the bar and spoke to him about Detective Higgerson. Defendant told Mr. Baratinni to tell Detective Hig-gerson that if he showed up in court, defendant had pictures of a “girl” that he would “go public with.” The next day, an assistant district attorney came to the bar |sto take pictures for the trial on defendant’s battery charge. At that time, Mr. Baratinni informed the assistant district attorney that defendant had been in the bar the day before and had threatened Detective Higgerson. Thereafter, Mr. Baratinni was interviewed by Lieutenant Cantrell and Lieutenant Bruce Harrison regarding the threat.
On cross-examination, Mr. Baratinni testified that the interviews with the police took place at his bar after the pictures were posted on The Dirty.com website. Mr. Baratinni stated that Detective Hig-gerson had worked for him for about ten years and that they were friends. Mr. Baratinni replied negatively when asked whether defendant showed him any pictures or described the pictures on the day defendant made the threats. He stated that he had no idea at that time that defendant was referring to a picture of a girl with her legs open on the hood of Detective Higgerson’s marked police vehicle and a picture of a girl on Detective Higgerson’s vehicle with her “behind in the air” while Detective Higgerson was standing next to the vehicle. Mr. Baratin-ni further testified that he was present the night the pictures were taken. He had no recollection, however, of a girl on the hood of Detective Higgerson’s vehicle. Further, he told the police that he did not think Detective Higgerson would allow a girl to get on the hood of his vehicle. Defense *1136 counsel then asked, “So when you supposedly called [Detective Higgerson] to tell him about what [defendant] told you, what did you tell him? What was the big threat, if you didn’t know what was even in the pictures?” Mr. Baratinni responded, “Well, I relayed the message. It was that if [Detective Higgerson] was to go to court, [defendant] was going to go public with some pictures he had.”
On redirect examination, Mr. Baratinni reiterated that defendant came by his bar and told him to pass the threat on to Detective | ^Higgerson, and to tell Detective Higgerson that it would be in his best interest not to go to court. Mr. Baratinni repeated that he passed this information on to Detective Higgerson.
The State then called Arthur Massel, who stated that he has known Mr. Baratin-ni for about fifteen years and had previously been employed at Mr. Baratinni’s bar. Mr. Massel testified that he was present when defendant spoke with Mr. Baratinni at the bar, overhearing a conversation in which defendant “said a policeman way back [sic] — he made a threat to him with some pictures that he had that he was going to go public with.” Mr. Massel explained that defendant stated that he would go public with the pictures if Detective Higgerson appeared in court.
On cross-examination, Mr. Massel testified that he has known Detective Higger-son for about three or four years. He stated that the day he overheard the conversation between defendant and Mr. Bar-atinni was the first and only time he had ever seen defendant. Thereafter, he gave a statement in which he told the police that as defendant was walking out of the bar, he heard him tell Mr. Baratinni to “[l]et [Detective Higgerson] know if he shows up in court I can go public with this.”
Detective Steve Higgerson testified that he has been employed with the Jefferson Parish Sheriffs Office for thirteen years, and he also worked a private detail at Mr. Baratinni’s bar for about eight or nine years. At trial, he identified defendant as the same individual he arrested for second degree battery due to a fight in the street in front of the bar.
The night before defendant’s trial for battery, Detective Higgerson received a phone call from Mr. Baratinni informing him that defendant “had some pictures [he] might not want to get out,” and it would be in his best interest if he did not testify at trial. Detective Higgerson stated that he took that as a threat. Despite 1 ¡¡this information, he testified at defendant’s trial on the battery charge in August 2009. Within a month after the trial, two photographs were posted on the internet depicting a woman posing on a Sheriffs Office patrol car.
At trial, Detective Higgerson described the circumstances at the time the photographs were taken. He testified that he had his back to his patrol car and was speaking with Mr. Baratinni, who had pulled up in his truck, when Mr. Baratinni brought his attention to the fact that there was a person on the hood of his vehicle. Detective Higgerson testified that when he turned to look, he saw the image captured in State exhibit two, which depicts a woman on the hood of his vehicle with her legs open. He noticed people standing outside, but he did not see the photographer.
On cross-examination, Detective Higger-son testified that he no longer works detail at the bar. He did not recall being in these photographs and did not remember a girl being on his vehicle before the photographs were posted on the internet. When Mr. Baratinni called him regarding the photographs, he had no idea what was depicted in the photographs. He acknowledged that defendant never contacted him *1137 directly. He testified that after he received the phone call from Mr. Baratinni, the next day at trial, he informed the assistant district attorney what Mr. Bara-tinni had told him.
Lieutenant Bruce Harrison testified that he has been employed with the Jefferson Parish Sheriffs Office since 1995. In August 2009, he was assigned an investigation involving public intimidation where the victim was Detective Higgerson. As part of that investigation, he interviewed Mr. Bar-atinni, Mr. Massel and Detective Higger-son and saw the two photographs of the woman on the car that were posted on The Dirty, com website.
|fiNumerous items were seized from defendant’s residence, pursuant to a search warrant, including a disc containing the two photographs relevant to the case. Lieutenant Harrison testified that a piece of paper with defendant’s arrest register in the battery case was folded inside two pieces of paper on which the pictures of the girl on the car were printed. Additionally, a ledger was found near the computer table. This ledger listed the name and address of the victim from the original battery incident on one page; Detective Higgerson’s name, badge number, off duty number and payroll number were listed on the next page.
Defendant was subsequently arrested on September 8, 2009. Lieutenant Harrison read defendant his Miranda rights. Thereafter, defendant admitted that he took the photographs, but denied posting them on the website. He further admitted that he was present at Mr. Baratinni’s bar the week of his trial for second degree battery, the same week he allegedly made the threats.
At the conclusion of trial on January 12, 2011, a six-person jury found defendant guilty of public intimidation. Defendant’s motions for new trial and post-verdict judgment of acquittal were denied. On February 11, 2011, the trial court sentenced defendant to five years imprisonment at hard labor. Defendant was also arraigned and denied the allegations in a multiple bill. On April 29, 2011, the trial court adjudicated defendant to be a fourth felony offender, vacated the original sentence, and resentenced him to twenty years imprisonment at hard labor to be served without the benefit of probation or suspension of sentence. Defendant filed a “Motion to Depart from Mandatory Minimum Sentence under LSA-R.S. 15:529.1 pursuant to State v. Dorthey,” [1] which the trial court denied. Thereafter, defendant filed a “Motion to Reconsider Sentence,” again urging a downward |7departure under State v. Dorthey, which the trial court also denied. This timely appeal followed.

ASSIGNMENT OF ERROR NUMBER ONE

The district court was in error denying the defendant’s motions for an arrest of judgment, for new trial, and for post verdict [sic] of acquittal.

[2]

Defendant argues the evidence was insufficient for a rational trier of fact to find him guilty beyond a reasonable doubt. Specifically, he contends that he lacked the *1138 specific intent to threaten or influence Detective Higgerson as a witness because (1) the comment was vague and unclear; (2) the comment was made to a third person; (3) it is not certain the comment was meant as a message; and (4) if the comment was a threatening message, there is no evidence that defendant actively desired its delivery.
Conversely, the State contends that given the testimony presented at trial, the jury was reasonable in finding that defendant made the threat with the specific intent to prevent Detective Higgerson from testifying at defendant’s trial for second degree battery.
The appropriate standard of review for determining the sufficiency of the evidence was established in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). According to Jackson, the reviewing court must decide, after viewing the evidence in the light most favorable to the prosecution, whether any .rational trier of fact could have found the defendant guilty beyond a reasonable doubt. When circumstantial evidence is used to prove the commission of the offense, LSA-R.S. 15:438 provides that “assuming every fact to be proved that the | ^evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence.” State v. Wooten, 99-181 (La.App. 5 Cir. 6/1/99), 738 So.2d 672, 675, writ denied, 99-2057 (La.1/14/00), 753 So.2d 208. This is not a separate test from the Jackson standard, but rather provides a helpful basis for determining the existence of reasonable doubt. Id. All evidence, both direct and circumstantial, must be sufficient to support the conclusion that the defendant is guilty beyond a reasonable doubt. Wooten, supra (citations omitted).
In this case, defendant was convicted of public intimidation, LSA-R.S. 14:122, which provides, in pertinent part:
A. Public intimidation is the use of violence, force, or threats upon any of the following persons, with the intent to influence his conduct in relation to his position, employment, or duty:
(1) Public officer or public employee.
[[Image here]]
(3) Witness, or person about to be called as a witness upon a trial or other proceeding before any court, board or officer authorized to hear evidence or to take testimony.
The offense of public intimidation requires specific criminal intent. State v. Meyers, 94-231 (La.App. 5 Cir. 9/14/94), 643 So.2d 1275, 1278. Public intimidation is not the intentional use of force or threats upon a public employee, but rather the use of force or threats upon the employee with the specific intent to influence the employee’s conduct in relation to the employee’s duties. Id. (citations omitted.)
Specific intent is defined as “that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act.” LSA-R.S. 14:10(1). Specific intent is a state of mind, and as such, need not be proven as a fact but may be ^inferred from the circumstances and actions of the defendant. State v. Graham, 420 So.2d 1126, 1127 (La.1982) (citations omitted).
At the trial of this matter, the State presented several witnesses who testified regarding the alleged threat made by defendant against Detective Higgerson. Mr. Baratinni testified that defendant told him “to pass the information on to [Detective Higgerson] about a court date, [sic] if [Detective Higgerson] was to show up [sic] he had pictures of a girl that he was going to *1139 go public with.” Additionally, Mr. Massel testified that he overheard defendant tell Mr. Baratinni that “he had some pictures [and] if [Detective Higgerson] showed up in court that these would go public.” At trial, Detective Higgerson stated that the night before defendant’s trial for battery, he received a phone call informing him that defendant “had some pictures [he] might not want to get out,” and it would be in his best interest if he did not testify at trial. Detective Higgerson testified that he took that as a threat. The defense did not present any witnesses at trial and defendant did not testify on his own behalf. Thus, the jury found the testimony presented by the State’s witnesses to be credible and obviously found that defendant made the threats. It is not the appellate court’s function to second-guess the credibility of witnesses as determined by the trier of fact, or to reweigh the evidence. State v. Baker, 01-1397 (La.App. 5 Cir. 4/30/02), 816 So.2d 363, 365 (citation omitted).
In State v. Jones, 00-980 (LaApp. 5 Cir. 10/18/00), 772 So.2d 788, this court upheld a conviction of public intimidation. In Jones, a deputy responded to a call regarding a disturbance inside of a bar. The deputy arrived at the bar and noticed the defendant, who matched the description of the perpetrator who was threatening a female. The defendant threatened the deputy and continued making threats to the deputy until another deputy arrived on the scene. On appeal, the defendant argued that the evidence presented at trial was insufficient to support his | ,nconviction because there was no proof that he intended to influence the deputy’s conduct in relation to her position, employment or duty. Id., 00-980, 772 So.2d at 790. This Court found the defendant made the threats of physical violence and employment termination, before he was arrested, with the intent to persuade the deputy not to arrest him and that the circumstantial evidence was sufficient to support the defendant’s public intimidation conviction. Id., 00-980, 772 So.2d at 792.
Similarly in this case, the jury could have reasonably concluded that the threats made by defendant were an attempt to influence the conduct of Detective Higger-son in relation to his duty as a public officer or as a potential witness. At trial, Mr. Baratinni stated that a couple days before defendant’s trial for battery, defendant told him to tell Detective Higgerson that if he showed up in court, defendant would go public with pictures of a girl. Detective Higgerson testified that the night before defendant’s trial for battery, he received a phone call from Mr. Baratin-ni informing him that defendant “had some pictures [he] might not want to get out,” and it would be in his best interest if he did not testify at trial. Detective Higger-son testified that he took that as a threat but nevertheless testified at defendant’s trial. Within a month of defendant’s trial for battery, two photographs depicting a girl posing on the hood of Detective Hig-gerson’s car were posted on the internet. Thereafter, in a search of defendant’s residence, copies of the pictures and a disc that contained both photographs were discovered. After being arrested, defendant admitted that he had taken the photographs, and that he was present at the bar the week of his second degree battery trial (the same week he allegedly made the threats).
Based on this testimony, we find that defendant’s statements were made with specific intent to attempt to influence the conduct of Detective Higgerson in Inrelation to his duty as a public officer or as a potential witness. Accordingly, a rational trier of fact could have inferred that defendant had the requisite specific intent to influence Detective Higgerson’s conduct *1140 with his threats of “going public” with the photographs.
Further, we find no merit to defendant’s arguments. First, the comment is not vague or unclear. Mr. Baratinni testified that defendant told him “to pass the information on to” Detective Higgerson that if Detective Higgerson was to show up at court, defendant “had pictures of a girl that he was going to go public with.” Mr. Baratinni further stated that defendant told him that it would be in Detective Higgerson’s best interest not to go to court. Second, the public intimidation statute, LSA-R.S. 14:122, does not require that the threat be made directly from defendant to the person he is threatening. Third, based on Mr. Baratinni’s testimony that defendant told him to pass the information on to Detective Higgerson, we find that the comment was not only meant as a message, but that defendant actively desired its delivery.
This assignment of error is without merit.

ASSIGNMENT OF ERROR NUMBER TWO

The district court was in error denying the defendant’s motion to suppress statements.

Defendant argues that after his arrest, he asserted his right to remain silent. Nevertheless, Lieutenant Harris on “continued to entice and cajole [him] into providing information and a statement.” Therefore, defendant contends his statement was made in violation of Miranda[3] and should not have been admissible at trial.
112The State asserts that defendant voluntarily and intelligently changed his mind. Thus, defendant’s statement was not in violation of Miranda and was properly admitted at trial.
The trial court’s decision to deny a motion to suppress is afforded great weight and will not be set aside unless the preponderance of the evidence clearly favors suppression. State v. Burns, 04-175, p. 5 (La.App. 5 Cir. 6/29/04), 877 So.2d 1073, 1075. A trial court is afforded great discretion when ruling on a motion to suppress, and its ruling will not be disturbed absent an abuse of that discretion. State v. Favors, 09-1084, p. 9 (La.App. 5 Cir. 6/29/10), 43 So.3d 253, 259, writ denied, 10-1761 (La.2/4/11), 57 So.3d 309 (citations omitted). In determining whether the trial court’s ruling on a motion to suppress is correct, an appellate court is not limited to the evidence presented at the motion to suppress hearing but also may consider pertinent evidence presented at trial. Favors, 09-1034 at 9, 43 So.3d at 259.
Before an inculpatory statement made during a custodial interrogation may be introduced into evidence,[4] the State must prove beyond a reasonable doubt that the defendant was first advised of his Miranda rights, that he voluntarily and intelligently waived his Miranda rights, and that the statement was made freely and voluntarily and not under the influence of fear, intimidation, menaces, threats, inducement, or promises. State v. Franklin, 03-287, p. 4 (La.App. 5 Cir. 9/16/03), 858 So.2d 68, 70, writ denied, 03-3062 (La.3/12/04), 869 So.2d 817. A statement obtained from the defendant by direct or implied promises, or by the ex- *1141 ertion of improper influence must be considered involuntary, and therefore, inadmissible. State v. Batiste, 06-824, p. 10 (La.App. 5 Cir. 3/13/07), 956 So.2d 626, 634, writ denied, 07-892 (La.1/25/08), 973 So.2d 751. Whether a defendant’s purported waiver of his Miranda rights was voluntary is determined by the totality of the circumstances. Batiste, 06-824, 956 So.2d at 633. The critical factor in a knowing and intelligent waiver is whether the defendant was able to understand the rights explained to him and voluntarily gave the statement. Batiste, 06-824, 956 So.2d at 634. Testimony of the interviewing police officer alone may be sufficient proof that a defendant’s statements were freely and voluntarily given. State v. Mackens, 35,350, p. 13 (La.App. 2 Cir. 12/28/01), 803 So.2d 454, 463, writ denied, 02-0413 (La.1/24/03), 836 So.2d 37.
In this case, defendant filed various pretrial motions, including a “Motion to Suppress the Confession.” At the suppression hearing, Lieutenant Bruce Harrison testified that on September 8, 2009, defendant was arrested and taken into custody. Upon his arrival at the detective’s bureau, Lieutenant Harrison advised defendant of his Miranda rights. Lieutenant Harrison stated that defendant refused to waive his rights. Lieutenant Harrison then told defendant that he wanted to explain the simplicity of the case to him, and asked him if he would be willing to listen. Defendant agreed to listen. He then told defendant what the investigation had determined, and defendant then gave a statement acknowledging that he took the pictures and was at the bar at the time the threat was allegedly made, but denying that he posted the pictures on the internet. Lieutenant Harrison testified that he did not ask defendant any questions or coerce, intimidate or promise him anything. Further, since his statement was not made in connection with any questioning, the statement was not recorded.
In support of the motion to suppress, defense counsel argued that defendant did not waive his rights, as indicated by the Rights of Arrestee form that was not filled out. Further, he specifically told Lieutenant Harrison that he had a lawyer, |14and that he did not want to give a statement. Nevertheless, Lieutenant Harrison pressed him and got a statement out of him. Defense counsel maintained that if defendant did not waive his rights, the statement was unconstitutionally obtained and should be suppressed.
The State argued that defendant made the statement voluntarily and not in response to any questioning by the police. After a hearing on the motion, the trial court denied defendant’s motion to suppress the statement.
In State v. Taylor, 490 So.2d 459, 461 (La.App. 4 Cir.1986), writ denied, 496 So.2d 344 (La.1986), the Fourth Circuit held that statements made by the defendant after he expressed his desire to remain silent were not taken in violation of Miranda, as the statements were the result of the defendant voluntarily and intelligently changing his mind. In Taylor, after the defendant had been read his Miranda rights, he indicated that he did not want to make a statement. The detective then explained to the defendant what the investigation was going to entail and the defendant subsequently made a statement. Id., 490 So.2d at 460. The Fourth Circuit stated:
The record shows that defendant understood his right to remain silent, that [the detective] did not brow beat him, and that no undue pressure was applied. A few minutes after he declined to talk about the robberies defendant voluntarily and intelligently changed his mind and decided he would talk.
*1142 The Fourth Circuit concluded that the defendant’s statements were not taken in violation of Miranda and were properly admitted into evidence, citing State v. Daniel, 378 So.2d 1361 (La.1979). Taylor, 490 So.2d at 461.
In Daniel, supra, the Louisiana Supreme Court found the defendant’s statement was not made in violation of Miranda. In that case, after the defendant was informed of his Miranda rights, he gave an indecisive negative response when asked if he wanted to make a statement. The officer then told the defendant, [ 1s“[B]efore you make up your mind one way or the other as to whether or not you want to talk to us, let me tell you what we’ve.got.” After the officer gave defendant this information, defendant made a statement. The Louisiana Supreme Court stated:
On these facts[,] we believe the trial judge should have denied the motion to suppress. Nothing in Miranda prevents an accused party from changing his mind and giving a statement after he has previously declined to do so, so long as the statement is voluntary and intelligently made.
Daniel, 378 So.2d at 1366.
The facts of both Taylor and Daniel are similar to this case. The record in this case shows that defendant initially indicated that he did not want to waive his rights and make a statement. Lieutenant Harrison then told defendant that he wanted to explain the case to him and defendant agreed to listen. Defendant then changed his mind and made a voluntary statement. Accordingly, we find that defendant’s statement was not made in violation of Miranda, and thus, the trial court did not err in denying defendant’s motion to suppress.
This assignment of error is without merit.

ASSIGNMENT OF ERROR NUMBER THREE

The district court was in error denying the defendant’s motion to limit hearsay evidence.

Defendant argues that the State should have been prohibited from introducing the printouts of the two pictures from The Dirty.com website because The Dirty.com website information attached to the pictures was inadmissible hearsay. He contends that the State “intended to make it look as if the defendant posted the pictures [on the internet] without any proof that he did.” He asserts that 11(ithis “effectively eliminated [his] opportunity to confront and contradict the suggestion that he published the pictures.”
On January 12, 2011, defendant filed a “Motion to Limit Hearsay Evidence,” arguing that the State should be prohibited from introducing hearsay testimony related to the pictures published on The Dirty, com website. Specifically, defendant asserted that the State intended to introduce evidence of the two photographs that were published on The Dirty.com website, who published the photographs, and when they were published. Defendant argued that a Dirty.com employee must testify concerning this information and “testimony from anyone other [than] a Dirty [.com] employee is based on unexcepted hearsay.” On the morning of trial, it appeared that the State and defense counsel had reached an agreement on this issue. The State indicated that it did not intend to put on any testimony or evidence regarding who posted the pictures, but would probably introduce the two photographs that were downloaded from The Dirty.com website. Defense counsel indicated that he did not have a problem with that.
Thereafter, during trial, the State sought to introduce State exhibits one and *1143 two, which were the pictures from The Dirty.com website, and defense counsel objected stating that these exhibits were exactly why he filed his motion.
State exhibit one contains a picture of a girl on the hood of Detective Higgerson’s vehicle in a suggestive pose. The Dirty, com logo is in the bottom right corner of the picture. Underneath the picture, it states:
THE DIRTY ARMY: Steve Higgerson is a 3rd district detective in Jefferson Parish. While on duty on a detail at Mike’s Place in Fat City, he has strippers on top his car instead of doing his job! Then has the nerve to testify in court and lie on the satnd [sic] numerous times! How the hell does he know what the hell was going on when he has a stripper bustin [sic] it open on the car, with a big smile on his face! This is who is suppose [sic] to be protecting our city! Damn, if this is what being an officer is all about I wanna [sic] be one too!!! Looks like you are busted Copper ... pictures don’t lie.-nik
117(Emphasis in original.)
State exhibit two contains a picture of a girl on the hood of Detective Higgerson’s vehicle in another suggestive pose. In the picture, Detective Higgerson is standing next to the vehicle, and The Dirty.com logo is in the bottom right corner. It states, “JPSO Finest ‘Steve Higgerson’” at the top of the page.
Defense counsel argued that the two pieces of paper identified as State exhibits one and two should not be admitted into evidence because they contain hearsay, and he would be unable to cross-examine the hearsay in the documents. Defense counsel further asserted that the documents were highly prejudicial and the State was trying “to back door the linkage between [defendant] and The Dirty.com, [website] posting which he cannot prove.”
Conversely, the prosecutor argued that State exhibits one and two were not hearsay because he was “not trying to prove the truth of any of the verbiage on [the] picture.” He asserted, “The State’s intention in introducing these is that the evidence we have been producing is that a threat was made, that ... if this police officer testified at the defendant’s other trial he would be embarrassed, he would be sorry. As soon as he testified this is what appeared on the internet. That’s the relevance of it.”
The trial court overruled defense counsel’s objection, stating that he was going to inform the jury that the exhibits were not being offered for the truthfulness of the matter asserted, but were being offered to “show that that is what was produced online.” Defense counsel moved for a mistrial, which the trial court denied.
Hearsay is an oral or written assertion, other than one made by the declarant while testifying at this trial, offered in evidence to prove the truth of the matter asserted. LSA-C.E. art. 801(C). Hearsay evidence is not admissible except as 118otherwise specified in the Louisiana Code of Evidence or other legislation. LSA-C.E. art. 802.
Defendant argues that the State should have been precluded from introducing State exhibits one and two because The Dirty.com website information attached to the pictures was inadmissible hearsay. Defendant’s argument is misplaced. These exhibits do not constitute hearsay because the documents were not offered into evidence to prove the truth of the information attached to the pictures on the website. These exhibits were only introduced to show that the pictures in question were in fact posted on the internet.
it. This assignment of error is without mer-

*1144
ASSIGNMENT OF ERROR NUMBER FOUR

The defendant’s twenty year sentence at hard labor without the benefit of probation, parole or suspension of sentence is excessive.[5]
Defendant argues that his twenty-year sentence is too severe given the facts of the case and the background of defendant. He contends that the twenty-year sentence shocks the sense of justice, and the trial court erred in denying defendant’s motion to depart from the mandatory minimum under State v. Dorthey, supra.
Conversely, the State contends that defendant has failed to show that the mandatory minimum sentence he received as a fourth felony offender is excessive. Further, the State argues that defendant has not demonstrated any exceptional circumstances to justify a downward departure under Dorthey.
In this case, defendant was originally sentenced to five years imprisonment at hard labor for his conviction of public intimidation. Thereafter, at the multiple 11sbill hearing, he was adjudicated to be a fourth felony offender based on his underlying conviction of public intimidation and four predicate convictions consisting of distribution of MDMA in 2006, attempted burglary in 2001, second degree battery in 1995, and possession of a firearm with an obliterated serial number in 1995. As a fourth felony offender, defendant faced a habitual offender sentencing range between twenty years and life. See LSA-R.S. 15:529.1(4); LSA-R.S. 14:122.[6] Defendant received the minimum sentence of twenty years.
The record reflects that, at the time of sentencing, defendant had filed a “Motion to Depart from Mandatory Minimum Sentence under LSA-R.S. 15:529.1 pursuant to State v. Dorthey,” and he objected to his sentence at the time it was imposed. Thereafter, defendant filed a “Motion to Reconsider Sentence,” again urging a downward departure under State v. Dorthey.
The Eighth Amendment to the United States Constitution and Article I, § 20 of the Louisiana Constitution prohibit the imposition of excessive punishment. A sentence is considered excessive if it is grossly disproportionate to the offense or imposes needless pain and suffering. State v. Taylor, 06-839, p. 3 (La.App. 5 Cir. 3/13/07), 956 So.2d 25, 27, writ denied, 06-0859 (La.6/15/07), 958 So.2d 1179. In reviewing a sentence for excessiveness, the appellate court must consider the punishment and the crime in light of the harm to society and gauge whether the penalty is so disproportionate as to shock the sense of justice. Taylor, 06-839 at 3, 956 So.2d at 27. The trial judge is afforded wide discretion in determining sentence, and the court of appeal will not set aside a sentence absent a clear abuse of the trial court’s discretion. State v. Pearson, 07-332 (La.App. 5 Cir. 12/27/07), 975 So.2d 646, 656.
IgftA mandatory minimum sentence under the Habitual Offender Law may still be reviewed for constitutional *1145 excessiveness. Taylor, 06-889 at 4, 956 So.2d at 27. When a trial court determines that the minimum sentence mandated by LSA-R.S. 15:529.1 makes no “measurable contribution to acceptable goals of punishment,” or that the sentence amounts to nothing more than “the purposeful imposition of pain and suffering” and is “grossly out of proportion to the severity of the crime,” the trial judge must reduce the sentence to one that would not be constitutionally excessive. Taylor, 06-839 at 4, 956 So.2d at 27-28. However, it is presumed that the mandatory minimum sentence under the Habitual Offender Law is constitutional. Taylor, 06-839 at 4, 956 So.2d at 28. In order to rebut the presumption of constitutionality, the defendant must clearly and convincingly show that he is “exceptional, which ... means that because of unusual circumstances this defendant is a victim of the legislature’s failure to assign sentences that are meaningfully tailored to the culpability of the offender, the gravity of the offense and the circumstances of the case.” Taylor, 06-839 at 4, 956 So.2d at 28. Downward departures from the minimum sentence mandated by LSA-R.S. 15:529.1 should only occur in rare situations. Id. When evaluating whether the defendant has met his burden, the trial court must be mindful of the goals of the Habitual Offender Law, which are to deter and punish recidivism. Id.
After the multiple bill hearing, but prior to sentencing, defendant testified regarding the status of his health, and defense counsel argued for a downward departure under Dorthey. Defendant testified that he was diagnosed with myelopoiesis, a type of colon cancer. He stated that he has had one surgery, but needs two more. He further stated that if he does not have the surgery, he will die. His condition also requires for him to be on a special diet.
|21In response to the State’s questions, defendant indicated that he was first diagnosed when he was 12 or 13 years old, and had surgery for this condition when he was 16 years old. Defendant stated that he was not able to receive the required medical treatment where he was currently incarcerated, but acknowledged that he currently has medical appointments scheduled and is currently receiving medical treatment for his condition.
Defense counsel then argued that a twenty-year sentence is grossly disproportionate to the facts of the case against defendant for public intimidation. He further asserted that a twenty-year sentence in the Department of Corrections with cancer is tantamount to a death sentence.
Conversely, the State argued that no records were provided to support defendant’s assertion regarding his medical status and this alleged condition would not be a reason for a downward departure under Dorthey.
Prior to sentencing defendant, the trial court stated:
While I understand your position, Mr. Ehle [defense counsel], that the length of time required under the habitual offender law may be steep considering the charge that he was found guilty on, it is the [c]ourt’s position that the multiple offender bill is a culmination of his previous history, and so whether or not I believe that the sentence is excessive for the charge that he was ultimately convicted of, I think it is his past criminal history that is before the [c]ourt.
In State v. Windham, 99-637 (La.App. 5 Cir. 11/30/99), 748 So.2d 1220, 1225, this Court upheld defendant’s mandatory life sentence as a fourth felony offender despite his health problems. In Windham, *1146 the defendant argued that his mandatory minimum life sentence was unconstitutional because of his failing health. Id., 99-637, 748 So.2d at 1223. He claimed he had kidney disease, which required dialysis treatment, and that he suffered from hip inflammation, as well as the lack of use of one arm. Id,. In upholding the defendant’s mandatory life ^sentence, this Court noted that the defendant had been committing felonies for much of his adult life. Id., 99-637, 748 So.2d at 1224. This Court further stated:
The multiple offender law expresses clear legislative intent. Repeat offenders are to receive serious sentences, [citation omitted.] It does not appear that Windham’s unfortunate medical condition has affected his propensity to commit crimes. Windham has not shown unusual circumstances necessary to successfully rebut the presumption of constitutionality of the mandatory sentence of life imprisonment.
Id. Additionally, this Court noted that the record reflected that the trial court was aware of the defendant’s health problems at the time of sentencing, yet obviously did not find that he had rebutted the presumption of constitutionality. Id., 99-637, 748 So.2d at 1223.
Similar to Windham, in this case, the record indicates that defendant has been committing felonies for much of his adult life, and it does not appear that defendant’s medical condition has affected his propensity to commit crimes. Further, as in Windham, the trial court in this case was aware of defendant’s health problems at the time of sentencing, yet apparently did not find that defendant had rebutted the presumption of constitutionality of the mandatory minimum sentence. Rather, the trial court focused on defendant’s past criminal history as a multiple offender when sentencing defendant.
Accordingly, we find that defendant has not shown exceptional circumstances necessary to successfully rebut the presumption of constitutionality of the mandatory minimum sentence.
This assignment of error is without merit.
| ^ERRORS PATENT REVIEW
The record was reviewed for errors patent, according to LSA-C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); and State v. Weiland, 556 So.2d 175 (La.App. 5 Cir.1990).
The record indicates that defendant was not properly advised of his multiple offender rights. Nevertheless, for the following reasons, corrective action is not required.
LSA-R.S. 15:529.1(D)(l)(a) provides that the trial court shall inform a defendant of the allegations contained in the bill of information and of his right to be tried as to the truth thereof according to law. Generally, a trial court’s failure to advise the defendant of his right to a habitual offender hearing or his right to remain silent is considered harmless error when the defendant’s habitual offender status is established by competent evidence offered by the State at a hearing rather than by admission of the defendant. State v. Hart, 10-905, p. 5 (La.App. 5 Cir. 5/10/11), 66 So.3d 44, 47, writ denied, 11-1178 (La. 11/18/11), 75 So.3d 448. Since defendant’s habitual offender status was established by competent evidence offered by the State at a hearing, the trial court’s failure to advise defendant of his multiple offender rights is harmless error.

CONCLUSION

For the foregoing reasons, defendant’s conviction and sentence are affirmed.

*1147
CONVICTION AND SENTENCE AFFIRMED

. State v. Dorthey, 623 So.2d 1276 (La.1993).

. First, it is noted that defendant did not file a motion for an arrest of judgment. Second, in this assignment of error, defendant does not address that the trial court erred in denying defendant’s motion for new trial and motion for post-verdict judgment of acquittal. Under Rule 2-12.4 of the Uniform Rules, Courts of Appeal, all specifications or assignments of error must be briefed, and the appellate court may consider as abandoned any specification or assignment of error that has not been briefed. Thus, we deem these assignments abandoned and address the argument of sufficiency raised in the body of defendant’s brief.

. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

. The United States Supreme Court defined "custodial interrogation" as the "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way.” Miranda v. Arizona, 384 U.S. at 444, 86 S.Ct. at 1612.

. It is noted that defendant’s twenty-year sentence was without the benefit of probation and suspension of sentence. However, there was no restriction placed on parole.

. LSA-R.S. 15:529.1(A)(4) states: "If the fourth or subsequent felony is such that, upon a first conviction the offender would be punishable by imprisonment for any term less than his natural life then: (a) The person shall be sentenced to imprisonment for the fourth or subsequent felony for a determinate term not less than the longest prescribed for a first conviction but in no event less than twenty years and not more than his natural life.”